ISAIAH DAVIS ET AL. *v*. C. L. C. CASS ET AL.

1. TAX TITLE. *Who may acquire. Co-tenants. Occupancy in severalty.*

   Where the purchaser of an undivided interest in land takes possession of and occupies in severalty a part thereof. and procures such part to be assessed to herself, and the owner of the other interest, in recognition of such partition, has the remainder assessed to him and pays taxes thereon, they owe each other no duty as to the payment of taxes, such as ordinarily exists between tenants in common, and if the part assessed to one be thereafter sold for taxes, the other is not precluded from acquiring it.

2. PROCESS. *Publication. Failure of defendant to receive. Decree.*

   A complainant is not bound to know, with absolute certainty, the address of nonresident defendants. In a proceeding according to the statute to confirm a tax title, where publication is made for all persons claiming any interest in the land, and the notice is by the clerk mailed to a nonresident defendant at the address given in the bill. a *pro confesso* decree confirming the title is not void because the notice was, through mistake, mailed to the wrong address, and failed to reach the party.

FROM the chancery court of the first district of Hinds county. HON. H. C. CONN, Chancellor.

Bill by C. L. C. Cass, Isabella A. Cass and C. L. S. Cass, the last two being minors, suing by their next friend, against Isaiah Davis, Nancy N. Davis, his wife, Sol. Dreyfus, Joseph Ascher and M. M. McLeod, to remove clouds from title.

Complainants, as heirs of Maria Louisa Cass, the wife of C. L. C. Cass and mother of the minor defendants, claim an undivided two-thirds interest in the lot in question, while the defendants claim their several interests under certain tax sales. The validity of the tax titles is the only question passed upon in the opinion, as it determines the whole controversy between the parties.

In 1874 Mrs. Maria L. Cass purchased the lot in question at an administrator's sale of the land of the estate of James Lynch. The widow of Lynch had a dower interest in the lot, and, in recognition of this interest, Mrs. Cass had a two-thirds undivided interest in the land assessed to herself and a one-third interest assessed to Mrs. Lynch. This one-third interest was sold to the state in March, 1875, for the taxes of 1874. It was again sold, in May, 1875, under the abatement act, and conveyed to the state. On October 9, 1882, Nancy M. Davis bought from the state the one-third interest formerly assessed to Mrs. Lynch, and, under this purchase, went into possession of, and inclosed, the west one-fourth of the lot, and built a residence thereon, and occupied it continuously until the filing of the bill herein.

In March, 1881, the two-thirds interest assessed to Mrs. Cass was sold to the state for the taxes delinquent for 1880. Mrs. Cass died in July, 1882, and on October 21, 1882, C. L. C. Cass purchased, in his own name, from the state, the two-thirds interest in the lot formerly owned by his deceased wife.

In recognition of the separate ownership of Nancy M. Davis under her purchase, C. L. C. Cass, after purchasing from the state the two-thirds interest formerly assessed to his wife, caused the east three-fourths of the lot to be assessed to himself, and paid taxes thereon until 1886, when it was sold for the taxes due the city of Jackson, and bought by S. Dreyfus. The latter filed a bill in 1890 to confirm his tax title, making C. L. C. Cass a defendant, and alleging that he was a nonresident, and that his postoffice address was 79 Carondelet street, New Orleans, La. Publication was made for him, as required by the statute, and, also, for all parties having or claiming any interest in the lot. Notice was mailed by the clerk to Cass at the above address, but, in due course of mail, was returned by the postoffice officials as unclaimed, and because Cass could not be found by them. On proof of publication and mailing of the notice, a *pro confesso* decree was taken, and, sub-

sequently, a final decree confirming the tax title. Dreyfus afterwards conveyed a one-half interest in the lot to M. M. McLeod, and a similar interest to Isaiah Davis, husband of Nancy M. Davis. Davis and his wife, shortly after this, executed a trust deed on the whole lot to P. Hart, as trustee, to secure debts due to Dreyfus & Ascher, and to McLeod.

The foregoing statement sufficiently shows the history and character of title relied on by defendants. The court decreed in favor of complainants as to a two-thirds interest in the lot, presumably holding that Nancy M. Davis, by her purchase of the one-third interest from the state, became a co-tenant of the land, and that her husband, Isaiah Davis, was disabled to acquire a tax title, and that his purchase thereof operated as a redemption. From this decree defendants appeal.

*M. M. McLeod*, for appellants.

The title to the one-third interest was in the state from March 2, 1876, until its purchase by Nancy M. Davis, October 9, 1882. The title to the two-thirds interest was in the state from March 7, 1882, until its purchase by C. L. C. Cass, October 21, 1882. Thus, the tenancy in common was dissolved. All the title and interest of each tenant had been united in the state. Nancy M. Davis and C. L. C. Cass were never tenants in common. Mrs. Cass died in July, 1882, after the period for redemption had expired. Complainants got no rights by inheritance from Mrs. Cass, her title having been completely divested before her death.

After her purchase, Nancy M. Davis went into possession of the western part of the lot and improved it. C. L. C. Cass also went into possession of the eastern part, and the two parts were separately assessed. This amounted to a parol partition, and after that they owed each other no duty. 31 Miss., 644; 51 *Ib.*, 848.

The whole estate, so far as the two-thirds interest of C. L. C. Cass is concerned, was vested in Dreyfus by his purchase

and confirmed in him by the decree of confirmation.    The court had jurisdiction, and that decree is binding.

*E. E. Baldwin,* for appellees.

1. The settlement by Nancy M. Davis on a portion of the lot did not change her title or interest.    She still continued to own a one-third interest in the whole lot, and complainants the two-thirds.    It matters not how they claimed it.

2. The decree of confirmation was not binding on the minor heirs of Mrs. Cass.    They were not even parties to the suit. Notwithstanding the decree of confirmation, the tax title was properly canceled.    The decree was rendered on an erroneous advertisement and a false statement as to defendant's postoffice address. .

3. The acquisition of the tax title by the husband of the co-tenant operated as a redemption.    *Cohea* v. *Hemingway,* 71 Miss., 22.

Argued orally by *M. M. McLeod,* for appellants, and *E. E. Baldwin,* for appellees.

COOPER, C. J., delivered the opinion of the court.

Mrs. Cass was not the owner of any interest in the lot in controversy at the time of her death.    Her interest therein had been sold to the state, in March, 1881, for the taxes due thereon for the year 1880.    The period for redemption expired in March, 1882.    Mrs. Cass died in July, 1882, and, so far as the record discloses, had, at that time, no interest in the lot. The period allowed for redemption having expired, the state's title was absolute, and nothing remained in Mrs. Cass of her former estate in the land.    When Mr. Cass bought from the state, he became owner of the land, and having, in turn, neglected to pay the taxes due to the city of Jackson, it was lawfully sold therefor, and the time allowed for redemption from that sale has also elapsed; but, in addition to this, it appears

that a bill to confirm this tax title was exhibited by the purchaser against Cass and all persons claiming any interest in the land, and a decree made thereon. This decree has been collaterally attacked in the present proceeding, and has been held for naught, for the reason that the copy of the published notice sent to the defendant by the clerk, and directed to the address of the defendant as given in complainant's bill, was not delivered by the postal authorities, but was returned to the clerk. This decree was not void, nor even erroneous, for a complainant is not required to know, with absolute certainty, the address of a nonresident defendant; and if, by reason of mistake, the complainant gives the wrong address, or the defendant changes his residence, or the notice, properly addressed, by reason of some casualty, fails to reach him, the decree subsequently made is not thereby rendered void. The court has jurisdiction of the subject-matter of the suit, the land. A general notice by publication is given by newspaper advertisement to " all parties claiming or having any interest therein," and a copy of this notice is required to be mailed to the known address of any defendant; but it was never contemplated that the validity of the proceedings and decree should depend upon the fact that the addressed notice should actually come to the hands of the defendant. When the decree is made upon publication only, the defendant may, within two years thereafter, procure a rehearing. Code 1880, §§ 1859, 1860. The defendant, Dreyfus, having, by his purchase at tax sale, acquired a good title to the land, so far as appears by this record, and having procured a decree confirming the same, stands doubly protected against the right asserted by the complainant to redeem.

The acquisition of this title by Davis, or by his wife if she had seen proper to buy the land, is not at all affected by the fact of the formerly existing tenancy in common between Mrs. Cass and Mrs. Lynch. That was long ago dissolved, and the purchasers from the state, Mrs. Davis and Mr. Cass, have never dealt with the land as tenants in common. Claiming in sever-

alty, Mrs. Davis occupied and improved a particular portion of the land, and Cass recognized her right by causing the remainder of the lot to be assessed to himself, and paying taxes on it, as thus assessed, for years. Mrs. Davis owed him no duty in reference to this land. She claimed no interest in it, and Cass recognized no right in her. Under these circumstances, he cannot now impose upon her the relation of a co-tenant, in order to seek protection thereunder as against the tax title resulting from his own default.

*The decree is reversed and bill dismissed.*