# CHARLESTON.

## JAMES *et als.* v. JAMES *et als.*

### Submitted September 7, 1915.   Decided November 23, 1915.

1.  TENANCY IN COMMON—*Tax Sale—Heirs of Purchaser—Co-tenants— Purchase of Outstanding Title.*

    Where the purchaser of land at a sale thereof for delinquent taxes, dies before the expiration of the year when by section 19, chapter 31, Code 1913, he would have been entitled to a deed; but after his death a deed is made to him, his heirs and assigns, and received by his heirs, then and for five years from the date of sale, by section 24,

of said chapter, entitled to a deed in their own names, and which deed is recorded, the land taxed to the grantee, and the taxes paid thereon for many years by said heirs, living on an adjoining tract, both tracts originally a part of the same tract, and they in good faith continuing to claim the land, and to pay the taxes thereon, the purchase by one of said heirs, during such relationship to his co-heirs, of an outstanding title to said land, will, at the election within a reasonable time by the other heirs to contribute to the cost and expense of such purchase, enure to the benefit of all the heirs and be subject to partition as part of the landed estate of the deceased tax purchaser.  (p. 232).

2.  SAME—*Tax Sale—Co-heirs of Purchaser—Purchase of Outstanding Title.*

But the co-heirs of the purchaser of such outstanding title must make their election within a reasonable time, and must pay to the purchaser in cash their just shares of the costs and expenses incurred by him, and it is error for the court on decreeing them their right to participate in such purchase to simply ascertain the amount to be paid by them and charge the same as a lien in favor of the purchaser, on the interests in the land so decreed.  (p. 235).

3.  PARTITION—*Outstanding Title—Purchase by Co-heirs—Decree.*

A proper decree in such case, after decreeing such rights to the co-heirs, and fixing the amount to be paid by them, would be to appoint a reasonable time within which the sums so decreed shall be paid, and if not then paid, that they be thereafter barred from participating in such purchase of the outstanding title.  (p. 235).

Appeal from Circuit Court, Kanawha County.

Suit by J. D. James and others against Daniel James and others.  From the decree the defendant named appeals.

*Reversed and remanded.*

*Belcher, Stiles & Goettman,* for appellant.

*Murray Briggs,* for appellees.

MILLER, JUDGE:

In a suit to partition the lands of Davis James, deceased, the only controversy between partitioners related to a tract of one hundred and four and one half acres, situated in Kanawha County.  The question was whether this tract constituted a part of decedent's estate, or was the individual property of the defendant Daniel James, as he claimed.

By the decree appealed from the court below adjudged this

tract to be a part of the estate of said decedent, but charged the respective interest of each of the five plaintiffs, being respectively a one tenth interest therein, with the sum of one hundred and eighty dollars, in favor of said Daniel James, or one tenth of the sum alleged and proven to have been paid by him to B. F. Pinson, a former owner, and from whom he obtained a deed therefor on February 21, 1912.

The facts pleaded and proven respecting said tract were that it was originally partitioned to the said B. F. Pinson, in the year 1882, as his share of his father, Jacob Pinson's estate; that thereafter it was taxed in his name and returned delinquent for the non-payment of the taxes thereon for the year 1893, and for which it was sold by the sheriff December 2, 1895, and purchased by the said Davis James, father and ancestor of plaintiffs; that Davis James died in November, 1896, before the expiration of the year when he would have been entitled to a deed, but that on December 8, 1896, the county clerk, upon the report of the surveyor, had made and executed in the form prescribed by law a deed to Davis James, and delivered the same to his heirs or some of them, and which they received and placed upon record; that thereafter and up until the time of the bringing of this suit, the widow and heirs took and held possession of the land, adjoining other lands of decedent, and on which he until his death, and they or some of them after his death, had continuously resided, and had paid all the taxes thereon; that after so obtaining said tax deed, said partitioners, including the said Daniel James, up until he purchased and took his deed therefor from said B. F. Pinson continuously claimed said tract, and contributed to and paid the taxes assessed thereon; that on learning of the purchase by said Daniel James of the outstanding title or claim of said Pinson, complainants proposed to him to contribute to the expense of said purchase and to share therein in the proportion of their alleged interests in said land, but which he declined, denying their right to so participate therein; that Pinson's only claim of right or title to said land, as original owner, was by and through a subsequent sale thereof for the non-payment of the taxes thereon for the year 1895, and the purchase thereof by the state, and the subsequent proceeding against the same by the commissioner of school

lands and the decree of redemption entered therein September
13, 1901, adjudging the same to have been redeemed by him,
but to which plaintiffs and partitioners were not made parties,
and did not appear.

Wherefore, it was claimed and contended by complainants
in the court below, and repeated here, that the purchase by
said Daniel James of the alleged title and interest of said
Pinson enured to their benefit as co-tenants or parceners with
him, and that the same amounted merely to a redemption of
said land by him from said Pinson, justifying the decree
appealed from.

The first question presented is, did complainants stand in
such relationship of co-tenants or parceners to their brother,
Daniel James, at the time of his purchase from Pinson as
entitled them, upon the terms decreed or upon any terms, to
take the benefit of that purchase to perfect their own title or
interest in said tract?

It is conceded that Davis James, the father, purchased said
tract, as alleged, in December, 1895, and if he had lived would
have been entitled to a deed in December, 1896, and that dying
within that year his heirs, by virtue of section 19, chapter 31,
serial section 1077, Code 1913, would have been entitled to
such deed, if applied for and obtained at any time within five
years from the date of such sale, but not afterwards. Section
24, chapter 31, serial section 1083, Code 1913. It is apparent
from the facts stated that at the date of said alleged redemp-
tion more than five years had elapsed from the date of the sale
and purchase by Davis James, and if the deed to him, then
deceased, was void for that reason, and passed no title to his
heirs, it was at the date of said order of redemption then too
late for the heirs to have procured a deed therefor pursuant
to said section 19, chapter 31, of the Code.

It seems to be law that a prior void deed for land purchased
at a tax sale will not preclude the grantee or his heirs entitled
thereto from applying for and obtaining a good deed for the
land purchased. *Baker* v. *Lane,* 82 Kans. 715, 718, and cases
cited; *City Bank of Portage* v. *Plank,* (Wis.) 18 Am. & Eng.
Anno. Cases, 869, note 872. It is also well settled that in the
absence of a regulatory statute a deed to one deceased is void,
and passes no title. Devlin on Real Estate, section 187; *City*

*Bank of Portage* v. *Plank, supra,* note and cases cited. In Kentucky, for example, the statute, section 2063, chapter 64, St. 1894, in terms, passes the title to the heirs of one deceased at the time of a deed or grant.

But while our statute gives the heirs the right to the tax deed in case of the death of their ancestor before deed obtained, it does not, like the Kentucky statute, pass the title to them under a deed to the deceased purchaser. The deed involved here purports to grant, bargain, sell and convey to Davis James, the grantee named, "his heirs and assigns forever", &c. It is not and cannot be construed to be a grant to the heirs of the deceased grantee, for the words employed are not words of purchase but of limitation only. 1 Devlin on Real Estate, section 187; 8 R. C. L. 952, section 27 and cases cited. In the deed before us the language is not even in the alternative "or his heirs", in which event, according to some authorities, we might construe the deed as a grant to "his heirs". *Neal* v. *Nelson,* 117 N. C. 393.

So we have squarely presented the question whether the deed to the father, being void, and the time for obtaining a deed by his heirs having passed, at the date of the redemption by Pinson, the defendant Daniel James, nevertheless, stood in such relationship of trust and confidence to his co-tenants or parceners, claiming under the original purchase and deed, and the statute entitling them to a deed within the five years after the date of sale, as to render him incapable of buying in the outstanding title and holding it free and acquit of the claims of his co-heirs?

Undoubtedly the right or equitable title of Davis James, the tax purchaser, descended to his heirs at his death, and the statute in terms gave them right to the deed that the clerk undertook to make to him, and we think that then and for the period of five years from the date of the tax sale, within which time the heirs would have been entitled to a deed, they continued to bear such relationship of co-tenants or parceners, or agents of each other in relation thereto, that one of them could not have bought an outstanding claim or title to the land so as to deprive his co-heirs from right of participation therein and so to perfect their claim or title, whether good or bad. This proposition we think fully supported by *Pillow* v. *South-*

*west Virginia Imp. Co.,* 92 Va. 144, 23 S. E. 32, 34; *Clements* v. *Cates,* 49 Ark. 242.

Did this relationship cease upon the redemption of the land by Pinson in 1901? Thereafter and down to the date of the deed from Pinson and wife to Daniel James, the latter with his co-heirs, some of them living on the adjoining land, originally a part of the same larger tract, continued to claim the land and the title thereto under said tax sale and deed, and to pay taxes thereon. Could Daniel James standing in such relationship of trust and confidence to his co-heirs buy in an outstanding title, though the better and perhaps the only good title, and hold the same free from the claims of his co-heirs? The authorities just cited, we think, answer, No. The claim of the father and of his heirs had real and potential existence from the date of his purchase, and so continued, as we have seen, certainly until the redemption of the land by Pinson. And thereafter and up until Daniel James purchased and took a deed from Pinson, shortly before this suit was brought, he and his co-heirs continued to claim the land adversely to Pinson. There was at no time any actual ouster by Pinson, unless his decree of redemption so operated, which we think is not the law.

The authorities cited and relied on to the contrary, and for the proposition that the title so acquired by Pinson superseded the title of the heirs of James, and worked an ouster of them, are: 17 Am. & Eng. Ency. Law, 678, 679, and cases cited in notes, and *Smiley* v. *Dixon,* 1 Penrose & Watts, (Pa.) 439. As stated in the text of the Encyclopaedia: "The general rule applies only during the continuance of the cotenancy, while the parties have a continuing community of interest in the property affected by the outstanding claim. Neither the doctrine nor the reason thereof has any application where the cotenancy has terminated." And further: "After an eviction of the tenants in common by a paramount title, either may purchase such title for his own exclusive benefit." The rules thus stated, as counsel for appellees say, may be substantially correct; but when as in the case here presented and arising under our law, all the heirs have continued up to the very day of acquiring the adverse title by one of them to claim title to the land in good faith, though

their title may be bad, even void, and there has been no actual
ouster or adjudication against them, they continue in privity,
and their conduct towards each other must be open and fair,
and if one buys in an outstanding claim of title, his purchase,
if they so elect within a reasonable time, and comply with the
usual terms which the law imposes in such cases, will enure to
the benefit of all who come and contribute to the costs and
expenses of such purchase. The cases already cited as sustain-
ing the contention of plaintiffs' counsel seem to us well found-
ed in reason. We have examined the cases cited in the notes
to 17 Am. & Eng. Ency. Law, *supra*. If well founded in
reason, they are easily distinguishable from the case at bar,
the facts and circumstances already referred to and considered
differentiating this case from those cited. We refer to *Jonas*
v. *Flanniken*, 69 Miss. 577; *Davis* v. *Cass*, 72 Miss. 985;
*Alexander* v. *Sully*, 50 Iowa 192; and *Coleman* v. *Coleman*,
(Ky.) 28 Am. Dec. 86.

The next and only other question which we need consider is,
whether, on pleadings and proof, plaintiffs have put them-
selves upon terms entitling them to claim the benefit of the
purchase from Pinson? The bill alleges, and we think suf-
ficiently, that plaintiffs or some of them, representing them-
selves and the others, shortly after said purchase by Daniel
James, proposed to him to come in and contribute to the cost
and expense of obtaining the outstanding title, but that their
offer was rejected, and their right denied by him, and they
profess their willingness and ability to so contribute, and pray
for relief thereon.

The pleadings and proof, we think, are sufficient to bring
plaintiffs within the rule. But the decree attempting to en-
force these rights we think erroneous. Instead of the decree
complained of, the court should have entered a decree ad-
judicating plaintiffs' right to share in the purchase of said
outstanding title, upon condition that within some reasonable
time, not a long time, they should pay into court or to said
Daniel James, their respective shares of the costs and ex-
penses, incurred by him in such purchase, as fixed and decreed
by the court, then the title so acquired by him should enure
to their joint benefit, and said James holds the title to the
said land in trust for himself and his co-heirs, in the propor-

tion decreed to them as aforesaid, and subject to the partition prayed for along with and as a part of the lands of which their father the said Davis James died seized and possessed. We think this proposition finds ample support in the cases of *McClain* v. *Batton,* 50 W. Va. 121; *Morris* v. *Roseberry,* 46 W. Va. 24; *Buchanan* v. *King,* 22 Gratt. 414; Freeman on Cotenancy and Partition, section 156.

It is proven that shortly after his purchase from Pinson Daniel James sold timber from said tract to the amount of fifteen hundred and sixty seven dollars and fifty cents. If so, of course his co-heirs are entitled to an accounting therefor; but no pleadings or other proceedings present that question here, and no provision therefor was made in the decree appealed from. In one of the briefs of counsel it is said an amended bill presenting this subject has been filed and is now pending in the court below awaiting the result of this appeal.

Our conclusion is to reverse the decree appealed from and to remand the cause to the circuit court for further proceedings to be had therein in accordance with the principles herein enunciated and further according to the rules and principles governing courts of equity.

*Reversed and remanded.*