### No. 28,075.

The Rutland Savings Bank, *Appellee*, v. Georgia L. Norman et al., *Appellees*, and Rosa B. Scott, Intervener, *Appellant*.

(266 Pac. 98.)

#### SYLLABUS BY THE COURT.

1. Tenancy in Common—*What Constitutes*. Two parties, each owning an undivided one-half interest in the oil and gas on a particular tract of land, acquired by separate conveyances from the same grantor, are tenants in common, notwithstanding one of them may also be the owner of the fee-simple title to the land. (*Jewell v. Gann*, 100 Kan. 43, 163 Pac. 645.)

2. Same—*What Constitutes—Special Duty Resting Upon One Joint Owner*. The fact that a special duty or obligation may rest upon one joint owner of any interest which does not rest upon the other will not of itself prevent them from being cotenants with all the rights and privileges of such.

3. Same—*Redemption of Entire Interest by Cotenant—Rights and Liabilities*. If a cotenant defendant in a foreclosure action elects to redeem a greater interest than his own proportion allowed by statute he does so for the benefit of himself and his cotenant, with the right of contribution in the latter within a reasonable time.

4. Same—*Redemption of Entire Interest by Cotenant—Right to Contribution*. Where the cotenant who has redeemed the entire estate from foreclosure sale holds his interest therein free from the obligation of the common grantor, and the other did not, the latter, in order to enjoy the privilege of contribution, must pay the redeeming cotenant the entire amount paid by him for redemption and interest thereon.

Appeal from Greenwood district court; Allison T. Ayres, judge. Opinion filed April 7, 1928. Reversed.

---

Tenancy in Common, 38 Cyc. pp. 6 n. 25, 12 n. 39, 40 n. 56, 46 n. 82, 47 n. 85. Cotenancy, 7 R. C. L. 816, 868.

*John Madden* and *John Madden, Jr.,* both of Wichita, for the appellant.

*W. L. Huggins* and *O. T. Atherton,* both of Emporia, for appellee Angus Carrington.

The opinion of the court was delivered by

HUTCHISON, J.: We are here concerned with the questions of redemption, cotenancy and contribution, especially as to the effect of redemption from a foreclosure sale by the owner of an undivided interest in the oil and gas, where the remainder of such interest is held by the owner of the land, the mortgage being the obligation of the common grantors. The trial court held in favor of the redemption made by the owner of the undivided interest in the oil and gas as excluding all other rights and interests, including that of contribution by one claiming to be a cotenant. From this order the one claiming to be a cotenant appeals.

The Normans owned the land, and, after placing a mortgage on it in favor of the Rutland Savings Bank, conveyed an undivided one-half interest in the oil and gas to Grieves, agreeing to protect him against the mortgage. The mortgage was later foreclosed. Grieves was served by publication and barred. The period of redemption was fixed at eighteen months, ending on December 15, 1926. During that period Grieves came in and asked to be let in to defend, asserting his interest as holder of an undivided one-half interest in the oil and gas. The request was granted and an order made giving him a right to redeem. The order went further, to the extent of quieting his title and barring and foreclosing all others if they failed to redeem on or before December 15, 1926. He redeemed on December 15, 1926, and the sheriff executed a deed to him on December 17, 1926. Shortly after the foreclosure judgment the entire interest of the Normans was conveyed to Rosa B. Scott. On December 18, 1926, three days after the redemption by Grieves, she filed her application to set aside the order of court permitting Grieves to redeem, and also requesting the privilege of contributing to Grieves, as a cotenant of his in the oil and gas interest, her proper proportion of his outlay for redemption. On December 30, 1926, Grieves conveyed the land and all his interests therein by special warranty deed to Angus Carrington, who was represented in court on the hearing of the application of Mrs. Scott. On January 31, 1927, a tender was made by Mrs. Scott to the attorney for Grieves of $28,795.65 as contribution, which was refused. The tender was intended to be

the whole amount paid by Grieves for redemption, including interest. Thereafter, on March 30, 1927, the court, after a full hearing, overruled and denied the application of Mrs. Scott, from which order this appeal is taken.

The right of Mrs. Scott to make such application is questioned because she was not a party to the case and did not regularly apply to intervene. Her application showed her to be the owner of the land, holding the interest of the Normans, who were the principal defendants in the case. That entitled her, under the redemption statute, to all the privileges of her grantors. (R. S. 60-3455.) Besides, this question was not raised in the trial court and her application was there fully heard on its merits, as the journal entry recites: "Thereupon, all the matters presented in said application were heard by the court."

The appellant insists that the order made granting Grieves the right to redeem was for many reasons void; and appellee calls our attention to the fact that no appeal was taken within six months. We will pass both of these points for the present, and consider the second part of the application of Mrs. Scott, as to her right as a cotenant to make proper contribution and be reinstated in the ownership of her undivided one-half interest in the oil and gas.

It is true she occupied a double capacity before redemption was made—that of owner of the land, and also owner of an undivided one-half interest in the oil and gas. Authorities are abundant to show that as owner of the land she would not be a cotenant with Grieves because their interests are entirely different, but not so far as the oil and gas interests are concerned. Is her relationship to him different from that of a third party to whom she or her grantors may have conveyed the remaining undivided half interest in the oil and gas? Would Grieves be heard to say such third party was not a cotenant of his? Our attention is directed to 7 R. C. L. 860:

"On a sale of the common property for the satisfaction of a debt the duty to pay which rests upon one tenant in common alone, his cotenant may purchase the interest in the same manner as a stranger might do so."

But it must be remembered this is not a purchase made by Grieves. Had he attended the sheriff's sale and purchased the land and mineral rights as well, the authority would have been applicable; but he did not purchase—he redeemed. He availed himself of a special, equitable privilege granted him by statute. Only a limited few have such privilege. (R. S. 60-3439 to 60-3457.) He

did not acquire his interest "as a stranger"; far from it. He and Mrs. Scott were the only ones who could possibly have redeemed. As to acquiring title from different sources, we quote further from the same page of 7 R. C. L.:

"This doctrine is opposed, however, for there are many well-considered cases wherein the courts have refused thus to restrict the general rule that a purchase by one cotenant inures to the benefit of the other, and have declared that that rule applies to tenants in common who derive their titles from different sources or at different times as well as to those cases wherein the titles of the several cotenants were derived from the same source and at the same time."

We have carefully studied the several citations given as exceptions to the general rule, that the purchase of one cotenant inures to the benefit of other cotenants, and they apply to a different state of facts from those in this case. The Normans put the mortgage on before they sold oil and gas rights to Grieves. Both Grieves and Mrs. Scott derive title from the Normans. A comprehensive note in 19 L. R. A., n. s., 591, covering many of the cases cited and others, summarizes the whole matter as follows:

"There are undoubtedly many exceptions to be found in the books to the general rule that the purchase by one cotenant of an outstanding title to, or encumbrance upon, common property, inures to the benefit of all the owners. An extensive search, however, has failed to disclose any other case in which it was held that such general rule would not apply, merely because the encumbrance so purchased was created by a former owner of the property, through whom all the tenants claim title. There are, however, as will be seen hereafter, some cases in which a purchase of such encumbrance by one cotenant was held not to inure to the benefit of all, but the decision in those cases was not based upon the fact that the encumbrance was created by a common predecessor in title, but was upon altogether different grounds, which would be equally applicable to the purchase by a cotenant of outstanding titles and encumbrances other than those created by one through whom they derived their title. The authorities, however, seem to be unanimous against the conclusion reached in *Jackson v. Baird*, that the fact that the encumbrance was created by a former owner, through whom all the parties claim title, will, of itself alone, make an exception to the general rule.

"Thus, it was specifically held in *McPheeters v. Wright,* 124 Ind. 560, 9 L. R. A. 176, 24 N. E. 734, that title could not be acquired by the owner of an undivided interest in land against his cotenant, at a sale under an encumbrance created by a former owner through whom both parties derived title."

All in the world Grieves had before he redeemed was his undivided one-half interest in the oil and gas. Mrs. Scott had the same and from the same grantors. We have a statute which gave Grieves the

right to redeem.without going into court and asking for it, and we doubt if the court could give him any more than the statute gave. (R. S. 60-3439.) He was an owner of a title and a defendant in the case.

We have another statute which particularly applied to his situation. It provides as follows:

"When the interests of several tenants in common have been sold on execution, the undivided portion of any or either of them may be redeemed separately." (R. S. 60-3454.)

While this statute may have special application, yet if a cotenant goes farther and attempts to purchase the entire interest, he does it for the benefit of himself and the other cotenants. (7 R. C. L. 873.)

The authorities cited generally and here considered refer to a purchase by a cotenant. This is not a purchase but a redemption. The statement of facts shows Grieves got a deed from the sheriff. Should the owner get a deed from the sheriff when he redeems? The statutes provide for the giving of a sheriff's deed to the purchaser if no redemption is made. It also provides for a sheriff's deed to be issued to the last creditor who redeems. But Grieves was an owner, not a purchaser or creditor. Suppose before the foreclosure suit was commenced he had settled with the mortgagee, or after foreclosure had purchased from the plaintiff the sheriff's sale certificate. In such case he would have been acting for himself and his cotenant and would have been subrogated to the rights of the mortgagee.

"The general rule is that where one tenant in common, in order to protect his interest, pays a mortgage on the common property, he is entitled to be subrogated to the rights of the mortgagee and to enforce the mortgage as against his cotenants, to the extent of their liability to contribute to the satisfaction of the mortgage." (7 R. C. L. 873.)

We have a statute prescribing the rights, privileges and duties of cotenants. (R. S. 60-3437.) We also have the statute on redemption by cotenants from foreclosure sales. (R. S. 60-3454.) We have the specific requirement as to their relative rights and duties with reference to the payment of taxes. (R. S. 79-426.) The plain and apparent purpose of all of them is to protect a cotenant in his property and at the same time protect others holding exactly the same kind of interest in the property. Their relations are fiduciary, and

they are not to be permitted to benefit themselves to the detriment of those holding similar interests.

"When two parties jointly own real property, and jointly occupy it harmoniously, one of them cannot, as against the other, claim full title to such real property by adverse possession." (*Shaw v. Bandel*, 122 Kan. 343, syl., 251 Pac. 1086.)

"While it is a general rule that one tenant in common may not, as against his cotenant, acquire sole title to the common property by purchase at a sale made to satisfy a lien existing when they became owners, the cotenant may not desire to object. He may consent that the purchaser take the full title indicated by master's or sheriff's deed, he may afterwards voluntarily relinquish his interest, and he may lose it by lack of diligence in electing to call on a court of equity to give him the benefit of the purchase." (*Moon v. Moon*, 107 Kan. 466, syl. ¶ 2, 192 Pac. 840.)

Kansas is not without cases where one of the cotenants held other and different interests and additional obligations and duties, as the parties do in this case. In the case of *Ehrhart v. Ehrhart*, 110 Kan. 759, the daughter received a deed from her parents reserving payment of $100·per annum as long as either of them might live. The daughter died. Her husband continued the payments a while, then ceased. He made a new arrangement with the grantors and received a new deed to himself. On application of his children—with whom he was a cotenant, they being heirs of his wife, their mother—although he owed the additional obligation of paying the $100 per annum, which they did not owe, the court held:

"That the evidence was sufficient to sustain a finding that upon the death of Mary Amelia Ehrhart, the defendant and plaintiffs became the owners as tenants in common subject only to the interest of the grantors; that by the second deed the defendant acquired no right or interest to the exclusion of his children, and that, subject to the rights of the surviving grantor, each of the plaintiffs is the owner of an undivided one-sixth interest, and the defendant of an undivided one-half interest." (Syl.)

Another Kansas case which meets the contention so stoutly maintained in this case is one where the owner of the land is held to be a cotenant with the farmer who harvested the alfalfa hay thereon.

"The plaintiff contracted with the owner of land on which alfalfa was growing to put up the hay for half. When the contract was performed, title vested in the plaintiff, and he owned half of each stack of hay as a tenant in common with the landowner. The plaintiff's cotenant could not pass title to more than his share of the hay, and the plaintiff could replevin his share from a person claiming it by purchase from the plaintiff's cotenant." (*Jewell v. Gann*, 100 Kan. 43, syl., 163 Pac. 645.)

Rutland Savings Bank v. Norman.

Under the authorities and the equities in the case we have no difficulty in concluding that Grieves and Mrs. Scott were cotenants in the oil and gas interest involved, and her offer of contribution of the whole amount of redemption with interest will entitle her to complete restitution of what she received by deed from their common grantors.

Our attention is called to the laches of Mrs. Scott in that she did not resist the application of Grieves in court and did not file her application until three days after redemption was made. She could not have successfully resisted the application of Grieves, and three days is not sufficient delay to indicate her acquiescence or inconvenience the party redeeming.

It is said that Angus Carrington is an innocent purchaser for value from Grieves. When he purchased of Grieves this motion of Mrs. Scott was on file and he took only a special warranty deed. He stood on no higher level than Grieves.

It is finally urged that Grieves was compelled to proceed as he did in order to protect his own interests, which would have been lost if the plan arranged by Mrs. Scott's husband had been successful. Perhaps so; it looks quite that way. Then he properly would be here asking for the same protection that Mrs. Scott is now asking. We do these parties no injustice by ascribing to each of them the apparent possession of at least the average intelligence and the usual human inclination to look after one's own interest first.

Reaching these conclusions, it will not be necessary to decide other points raised in the briefs. The order of the trial court denying the application of Mrs. Scott as to her right of contribution is reversed, and the cause is remanded with directions to grant her that right upon paying into court for the benefit of Grieves or his assigns the entire amount of redemption paid by him, with interest, and to make such further and necessary orders as will give Mrs. Scott the full title to the land and an undivided one-half interest in the oil and gas therein.