EDITH ALLISON JESBERG, *Appellant,* v. DWIGHT D. KLINGER, *Appellee.*

No. 41,275

MARIANNE ALLISON METCALF, *Appellant,* v. DWIGHT D. KLINGER, *Appellee.*

(337 P. 2d 660)

Opinion filed April 11, 1959.

*Glee S. Smith,* of Larned, argued the cause, and *Maurice A. Wildgen* and *Donald L. Burnett,* both of Larned, and *Frank E. Daily, Jr.,* of Coldwater, were with him on the briefs for the appellants.

*E. C. Minner,* of Dodge City, argued the cause, and *J. V. Severe,* of Ashland, and *Harry A. Waite,* of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: The trial court entered its order in each of these appeals sustaining defendant's general demurrer to plaintiff's petition and plaintiffs appealed therefrom. The appeals were consolidated for appellate review and we will consider them as one.

The pertinent portions of plaintiff's petition in brief alleged that defendant at all times was a cotenant of plaintiff and an owner of minerals in place and that plaintiff owned an undivided one seventh interest in such minerals. On August 15, 1955, the county commissioners by their resolution caused a tax foreclosure action to be filed on April 5, 1956. On April 9, 1956, an affidavit for service by publication was filed, but plaintiff had no actual knowledge or notice prior to October 1, 1956. On June 11, 1956, judgment was entered in the action at which time plaintiff was in default of appearance or pleading. On June 12, 1956, an order of sale

was issued to the sheriff who, pursuant thereto, sold plaintiff's interest in the minerals to defendant for the sum of $63.90 and made his return on August 22, 1956. The sale was confirmed by the court on August 23, 1956, and on August 24, 1956, the sheriff executed and delivered his deed to defendant conveying plaintiff's interest, which deed was recorded on August 29, 1956, in the office of register of deeds. The value of plaintiff's interest was $3,200.00. Plaintiff tendered to defendant the purchase price together with interest to reimburse him and make him whole as between cotenants, pursuant to G. S. 1949, 79-426. Defendant, as cotenant, bore a fiduciary relationship to plaintiff which disqualified him as a purchaser at the tax sale and any tax sale made to him inured to her benefit. Defendant did not notify plaintiff of the tax assessments against her mineral interest, knowing that she would have timely paid them, but defendant made an effort to keep the information concerning the taxes and the delinquency from plaintiff so he might, as a result, purchase plaintiff's mineral interest in the land at the tax foreclosure sale. Within twelve months, the time prescribed by G. S. 1949, 79-2804b, and pursuant thereto, plaintiff had filed her petition and the court therefore had jurisdiction of the action.

Defendant filed a motion to make the petition definite and certain in seven respects, four of which were overruled, and properly so because the three parts that were sustained, for all practical purposes, satisfied the requirements of the entire motion.

Plaintiff fully complied with the trial court's order by filing an amendment to her petition which in substance showed that in June, 1939, Delle Allison, fee simple owner of the entire property, by means of a family settlement conveyed in writing all the surface and one seventh interest in the minerals to her son, John, and simultaneously conveyed an undivided one-seventh interest in the minerals to each of her six daughters, plaintiff being one of them. Prior to November, 1945, John obtained the interests of four of his sisters, thus merging the surface and undivided five-sevenths' mineral interest in him which he conveyed to defendant in November, 1945. Plaintiff's title and defendant's title, therefore, came from the same common source, Delle Allison. Plaintiff further alleged the provisions of G. S. 1949, 79-420 have been the law since 1897 and that all the mineral interests were assessed and taxed separately from the surface rights from 1939 to 1945 according to 79-420. No taxes

had been paid on the minerals from 1939 to 1945. They were apparently overlooked or eliminated by county officials for reasons unknown to plaintiff. Defendant, at all times an actual resident of the county, knew plaintiff was a nonresident of Kansas. He knew she was a cotenant with him in the minerals in place and he knew that plaintiff's interest was being taxed. He knew plaintiff had not paid the taxes levied on her interest and he failed to notify her of the unpaid taxes. He knew her mineral interest would be sold if the taxes were delinquent a sufficient length of time and he knew if plaintiff did not know of the tax foreclosure action, he could purchase his cotenant's interest, binding against her, if she failed to bring an action under G. S. 1949, 79-2804b. With this knowledge defendant devised a plan to acquire plaintiff's interest which he carried out contrary to and in violation of his fiduciary duty to her as a cotenant.

In its journal entry of judgment sustaining defendant's general demurrer to plaintiff's petition as amended, the trial court stated the following as its basis for sustaining the demurrer:

"Although the petition filed herein to which the demurrer is directed states:
" '4. That the defendant, Dwight D. Klinger, has been at all times hereinafter complained of a cotenant of the plaintiff and an owner of minerals in place and an owner of reversionary rights of minerals in place in and under the real estate hereinabove described,'
the court understood that the parties submitted the demurrer with the understanding that the defendant, Klinger, was the owner of the surface interest as well as a part of the mineral interest in the real property involved.".

Plaintiff in perfecting her appeal raises this one question—did defendant violate his fiduciary duty as a cotenant of plaintiff by purchasing her mineral interest at the tax foreclosure sale? Defendant states the question—may one purchase at county tax foreclosure sale and acquire good title to the separately assessed and taxed fractional mineral interest of a cotenant?

At this stage of the proceedings we are concerned with this question only so far as it relates to the sufficiency of the petition to state a cause of action because we do not know what the issues will be should the petition be determined to be sufficient.

The pertinent part of the controlling taxation statute (G. S. 1949, 79-420) substantially provides that when the surface of real property is owned by one party and the minerals in and under the ground are owned by other different parties, the surface is assessed and taxed separately to the owner thereof, and the min-

erals in and under the ground are also separately assessed and taxed to the owners thereof.

After this assessment and levy of taxes is made and the tax as to an interest in the minerals in and under the ground is not paid, the county by and through its proper officials procures a judicial foreclosure and sale of the property in accord with the provisions of G. S. 1949, 79-2801, *et seq.*, among which is 79-2804b providing:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale . . . but every such action or proceeding . . . must be commenced within twelve months after the date the sale of the real estate, which was affected by such judgment, order of sale or sale, was confirmed by the court."

In brief, the remainder of this statute provides that the time limitation shall be construed as a condition precedent to the bringing of such an action and shall not be construed as a statute of limitation; it is jurisdictional in nature and applies whether the purchaser at the foreclosure sale be the county or an individual.

The petition sufficiently alleged the foregoing statutes. The other statute referred to therein is G. S. 1949, 79-426 which in part provides:

"When land owned by two or more persons shall be assessed jointly, and any one or more of them shall not pay the proper portion of the tax due in such cases, any such owner paying the whole tax or who has redeemed the whole tract after it has been sold for delinquent taxes shall have a lien on the interest of the owner who was delinquent to the extent of the tax justly owing by such delinquent."

Plaintiff relies on a general rule that by reason of the community of interest there exists between these cotenants a relationship of mutual trust and confidence respecting their common property to the end that the title and rights of each shall be preserved unimpaired at least to the extent that one co-owner shall not assault the interest of another. (14 Am. Jur., Cotenancy, § 4, p. 78.) It should be noted that generally a co-owner who purchases a tax title has a lien on the interest of the delinquent co-owner but it amounts merely to a payment of the taxes or a redemption from the sale, and the purchaser gets no right against his co-owner unless the delinquent co-owner fails or refuses to contribute to the expenditure (14 Am. Jur., Cotenancy, § 54, pp. 123, 124); nor does placing a tax deed for the whole property on record oust a cotenant unless he knows of the purchaser's adverse claim. (86 C. J. S., Tenancy in Common, § 34, p. 390.) Such a purchaser does have the right

to a lien for contribution or reimbursement for money expended, together with interest and costs. (86 C. J. S., Tenancy in Common, § 66, p. 443.)

Plaintiff cites *Jinkaway v. Ford,* 93 Kan. 797, 145 Pac. 885, involving a holder of a life estate and a remainderman which fairly states the above general rules. However, that case can have no application here because the situations presented are dissimilar even though the same primary question of taxes is there dealt with.

Both parties cite and rely on *Rutland Savings Bank v. Norman,* 125 Kan. 797, 266 Pac. 98, wherein mineral interests were likewise involved. The general rules of cotenancy were well stated therein but the question concerned a mortgage foreclosure and not a tax sale or deed as we have here. Zealous counsel directs our attention to dictum in the Rutland case which would seem to support his theory but the Rutland case is controlled by different statutes relating to general foreclosures.

Another citation by plaintiff is *Hayden v. Hughes,* 147 Kan. 511, 77 P. 2d 938, which was likewise concerned with a mortgage foreclosure. The general rules as well as the actual rules laid down in the Rutland case were reiterated therein.

According to the ruling in *Sherman County Comm'rs v. Alden,* 158 Kan. 487, 148 P. 2d 509, 152 A. L. R. 881, statutes covering general foreclosure sales and deeds do not govern here. Tax matters, such as we have here, are completely controlled by special statutes (now G. S. 1949, 79-2801, *et seq.*) and general confirmation statutes do not apply. In a tax foreclosure sale the county cannot take a deficiency judgment. The proceeding is an action *in rem,* or against the property alone. (p. 492.) There is no occasion for intervention of equity because the tax statutes are specific and complete. (p. 493.) Another statement justifying the distinction of the tax foreclosure action from a general foreclosure sale is as stated therein:

"Taxes are not classed as debts in the usual sense of the term and actions prescribed by the civil code do not lie for their recovery." (Syl. ¶ 4.)

The distinction just noted is further pointed out in *Pease v. Snyder,* 169 Kan. 628, 631, 632, 220 P. 2d 151, but that case is distinguishable from ours because a third person was the purchaser who obtained and recorded a tax deed. Another case along this line is *Royalty Holding Co. v. Gerber,* 180 Kan. 806, 308 P. 2d 108.

Since defendant admits there was a cotenancy prior to the tax

foreclosure, we do not deem it necessary to present a full discussion of the entire structure of cotenancy. A partial presentation can be found in *Fry v. Dewees,* 151 Kan. 488, 99 P. 2d 844.

A more recent declaration of the rule that the power to tax is legislative in character, and all matters relating thereto do not exist apart from G. S. 1949, 79-2801, *et seq.,* is to be found in *Phillips Petroleum Co. v. Moore,* 179 Kan. 482, 297 P. 2d 183, where the Phillips Company waited eleven years to come in under 79-2804b. We held the Phillips Company did not avail itself of the benefits of 79-2804b within the time prescribed and was too late. By that decision much pre-existing confusion in our case law on the subject was cleared up. See, also, *Royalty Holding Co. v. Gerber,* supra.

Defendant states on respectable authority that where a cotenant's interest is assessed and taxed separately rather than against the whole common property, another cotenant may acquire the interest for himself if he has acted in good faith, and there is no contractual obligation, express or implied, to pay the tax of the defaulting cotenant. Whether plaintiff's proof will support her allegations—such as bad faith and an implied contract—cannot now be determined but this case is subject to G. S. 1949, 79-2804b and that statute cannot be ignored. Plaintiff is certainly in time with her action. This statute charges defendant with knowledge that the foreclosure proceeding from which he obtained his deed could be collaterally attacked by plaintiff by an action commenced within twelve months. This is a protection to defendant because under previously discussed authority, he can recover his money expended with interest and costs. If plaintiff had failed to come in under the twelve months, he would have had fee simple title to her mineral interest by the rule in the Phillips case, as well as *Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 159, 231 P. 2d 220. There a member of the defendant board was held to be an ineligible purchaser in a tax foreclosure action but it was also held the action was not commenced by the delinquent taxpayer within the time (then six months) pursuant to the provisions of 79-2804b. We cannot lose sight of these controlling statutes by reason of a maze of rules of law controlling cotenancy.

When examined under the controlling statutes and the pertinent authorities we conclude the petition states a cause of action and the trial court erred in sustaining the demurrer thereto.

Reversed.