EDITH ALLISON JESBERG, *Appellant,* v. DWIGHT D. KLINGER, *Appellee.*

No. 42,033

MARIANNE ALLISON METCALF, *Appellant,* v. DWIGHT D. KLINGER, *Appellee.*

(358 P. 2d 770)

Opinion filed January 21, 1961.

*Frank E. Dailey, Jr.,* of Coldwater, and *Maurice A. Wildgen, Glee S. Smith* and *Donald L. Burnett,* of Larned, were on the briefs for the appellants.

*J. V. Severe,* of Ashland, and *E. C. Minner* and *Harry A. Waite,* of Dodge City, were on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: Two actions were commenced pursuant to G. S. 1949, 79-2804b to cancel and set aside a sheriff's deed conveying to the defendant the undivided one-seventh interest of each of the plaintiffs in the minerals in place in 1120 acres of land in Clark County. The plaintiffs' evidence and the question of law involved being the same in both cases, the actions were consolidated for trial by the court below which made findings of fact and conclusions of law and rendered judgment in favor of the defendant. The plaintiffs appeal from the judgment, and pending the appeal the parties' stipulation that the decision in one case would bind and control the other was approved. Accordingly, the cases were consolidated for appellate review and case No. 42,032, being identical to case No. 42,033, is the appeal considered in this opinion.

In June 1939 Delle Allison owned the fee simple title to the land in question and in order to bring about a family partition conveyed all the surface and one-seventh interest in the minerals in place to her son John Allison, and simultaneously conveyed by separate deeds an undivided one-seventh interest in the minerals in place to each of her six daughters, the plaintiff being one of them. Those conveyances were duly recorded in Clark County. Prior to November 1945 John Allison purchased the mineral interests of four of his sisters (other than the plaintiffs) and reconveyed to two of them by separate written conveyances their respective undivided interests for a term of fifteen years from November 1, 1945, and as long thereafter as oil and gas are produced, thus merging the surface ownership and an undivided five-sevenths'

interest in the minerals in place in him subject to the "term" mineral interests of the two sisters.

In November 1945 John Allison sold and conveyed all of his right, title and interest in the land in question to the defendant Dwight D. Klinger. That conveyance was duly recorded and was a transaction in which the plaintiff was not involved.

The plaintiff is a resident of California where she had lived for several years prior to acquiring any interest in the land in controversy. Klinger is a resident of Clark County where he had lived for several years prior to November 1, 1945.

In 1946 and subsequent years the county officials of Clark County complied with G. S. 1949, 79-420 and assessed and taxed the surface rights of all the land in that county separately from the mineral rights where the surface and mineral rights were owned by different parties, and assessed and taxed the plaintiff's undivided one-seventh mineral interest separately from mineral interests owned by other persons and separately from the surface of the land in question. Upon the plaintiff's failure to pay the taxes assessed against her mineral interest it was bid in by the county at the annual delinquent tax sale (G. S. 1949, 79-2306) and remained unredeemed for more than three years (G. S. 1949, 79-2401a).

In the spring of 1956 the board of county commissioners of Clark County instituted a tax foreclosure action in the district court entitled "Board of County Commissioners of Clark County v. Altman, et al," case No. 4376, to foreclose delinquent and unredeemed tax liens on real estate in the county (G. S. 1949, 79-2801, *et seq.*), including the mineral interest of the plaintiff. Personal service of summons was not had upon the plaintiff, and upon the affidavit of the county attorney service of summons by publication was obtained which was approved by the district court.

On June 11, 1956, no appearance or pleadings having been made or filed by the plaintiff and she being in default, the district court rendered judgment in favor of the board of county commissioners foreclosing the tax liens upon the real estate described in the tax foreclosure petition, including the plaintiff's mineral interest here involved. On June 12, 1956, the district court issued an order for the sale of the real estate, notice of which was given, and at the sheriff's sale held on August 1, 1956, the plaintiff's mineral interest was sold to the defendant for the sum of $63.90, representing the judgment for unredeemed taxes and a proportionate share of costs.

The sale was duly confirmed by the district court on August 23, 1956. The following day the sheriff of Clark County executed and delivered to the defendant his deed conveying the plaintiff's interest in and to the minerals in place, which was recorded on August 29, 1956.

On August 17, 1957, being within twelve months from the date of confirmation of the sheriff's sale (G. S. 1949, 79-2804b), the action out of which this appeal arises was commenced by the plaintiff in which she alleged in substance the defendant knew her undivided one-seventh interest in the minerals in place was taxed pursuant to G. S. 1949, 79-420; that he knew for at least three years prior to the institution of the tax foreclosure action that the plaintiff had not paid the taxes assessed against her mineral interest; that he failed to notify plaintiff of her unpaid taxes; that at all times he knew the interest of plaintiff would be sold for unpaid taxes if the same were delinquent a sufficient length of time; that he knew if the plaintiff did not know of the commencement of the tax foreclosure action he would be able to purchase the mineral interest of the plaintiff at the sheriff's sale; that with his knowledge of the foregoing facts and law the defendant devised in his mind a plan to so acquire the interest of plaintiff in the minerals which plan she alleged the defendant carried out; that as a result of the bad faith on the part of the defendant, and an implied contract arising out of the fiduciary relationship the defendant bore the plaintiff as a tenant in common in the real estate in question, he was disqualified as a purchaser at the tax foreclosure sale and any sale made to the defendant pursuant to that proceeding inured to the benefit of the plaintiff and she tendered to him through the district court the amount of money, including interest, necessary to reimburse him for his purchase of her mineral interest.

This case was here in 1959 (*Jesberg v. Klinger*, 184 Kan. 519, 337 P. 2d 660), and it was held that the defendant's demurrer to the plaintiff's petition was erroneously sustained and the case was remanded for further proceedings. In his answer the defendant denied all of the plaintiff's allegations except the prior ownership of the land and mineral interests; admitted the tax foreclosure sale and that he purchased the mineral interest of the plaintiff at the sale, and alleged that he acted in good faith in the purchase of the plaintiff's mineral interest and under the honest belief that he was an eligible purchaser and could purchase the same as a stranger might do.

Following trial the district court specifically found that at and prior to the date of the sheriff's sale the defendant was not acquainted with the plaintiff and did not know where she resided; that he never at any time had communication, conversation or transaction with anyone representing the plaintiff concerning her mineral interest; that he had not paid any taxes upon plaintiff's mineral interest nor had he been requested to pay any taxes thereon; that he did not know until after publication of the sheriff's notice of sale that the taxes on plaintiff's mineral interest had not been paid, or that her interest was subject to a sheriff's sale; that he did nothing to prevent the plaintiff from paying her delinquent taxes or from learning of the tax foreclosure sale; that he believed he had a right to purchase the mineral interest the same as a stranger might do and that he acted in good faith in purchasing her interest, and that the plaintiff failed to prove the defendant acted in bad faith in purchasing her mineral interest, or any facts or circumstances tending to establish an implied contract to pay the plaintiff's taxes. In harmony with its findings the court rendered judgment that the defendant acquired fee title to plaintiff's mineral interest.

The sole question presented is whether a tenant in common who acts in good faith may purchase at a tax foreclosure sale and acquire fee title to the separately assessed and separately taxed fractional mineral interest of a cotenant.

On the question stated, the plantiff asserts that while G. S. 1949, 79-420 provides for the assessment of mineral interests separate from the surface where there has been a severance, it does not provide for the separate assessment of the various mineral interests themselves; that as between owners of fractional mineral interests there is nothing in the statute which requires such interests to be assessed and taxed separately to each respective owner, and contends that the unilateral action of the county clerk in separately listing and assessing the various mineral interests without statutory authority did not terminate the cotenancy, nor destroy the fiduciary relationship and the duties imposed thereby on the respective cotenants.

Whatever may be stated elsewhere, it is a settled rule of law in this state that a mineral interest in and to oil and gas in place constitutes an interest in real estate (*Mining Co. v. Crawford County,* 71 Kan. 276, 80 P. 601; *Gas Co. v. Neosho County,* 75 Kan. 335, 89 P. 750; *Richards v. Shearer,* 145 Kan. 88, 64 P. 2d 56; *Shaffer v. Kan-*

*sas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4; *Holland v. Shaffer*, 162 Kan. 474, 178 P. 2d 235; 173 A. L. R. 845), and owners of individual mineral interests in place are tenants in common to the right or title to any minerals conveyed by the grant (*Rutland Savings Bank v. Norman*, 125 Kan. 797, 802, 266 P. 98; *Holland v. Shaffer*, supra; *Gillet v. Powell*, 174 Kan. 88, 254 P. 2d 258).

Was the county clerk required to value and list separately the plantiff's mineral interest? An examination of G. S. 1949, 79-420 convinces us that he was. That statute reads:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided*, That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

It is obvious that when, as the statute expresses it, "the right or title to any minerals therein" has been severed and carved out of the land which covers and envelopes the minerals, commonly referred to as "the surface" or "the land," the ownership has been horizontally divided and a separate estate created which consists of the mineral rights that have been segregated. (*Gas Co. v. Neosho County*, supra.) Or, stated otherwise, two separate estates exist, each of which is distinct; the surface and the mineral rights are then held by separate and distinct titles in severalty and each is a freehold estate of inheritance separate from and independent of the other. (*Moore v. Griffin*, 72 Kan. 164, 83 P. 395; *Mining Co. v. Atkinson*, 85 Kan. 357, 116 P. 499; *Shaffer v. Kansas Farmers Union Royalty Co.*, supra.) However, where the owner of the surface conveys fractional portions of the minerals in place to more than one person, or, as the statute provides, where such right or title "is in another or in others," each grantee becomes the owner of the stated portion of the oil and gas in the land. (*Gas Co. v. Neosho County*, supra, p. 338; *Shaffer v. Kansas Farmers Union Royalty Co.*, supra, p. 90.) For taxation purposes, the statute regards the owner of each fractional portion of the mineral rights as the proprietor or owner of a distinct item of property which is taxable to him apart from that which is taxable to the owner of the surface,

and separate and apart from other fractional portions of the minerals conveyed. The legislature has recognized that such an ownership may be valuable and is property distinct from the remainder of the land and from other fractional interests, and has provided for their separate listing and taxation. (*Gas Co. v. Neosho County*, supra; *Richards v. Shearer*, supra, p. 90.) Where, as here, the right or title to any minerals in land is in another or in others such right is required to be valued and listed separately by the clerk or assessor of the county from the surface of the land, and separate and apart from the right or title to any other mineral interests. Thus, when the plaintiff recorded her deed in 1939 the register of deeds was required to furnish a certified description of her fractional interest in the minerals to the county clerk who was required to value and list it separately from the fee of the land, in separate entries and descriptions, and separate and apart from other fractional mineral interests. Whether the plaintiff's right to the minerals was over or under valued, or whether it had any value at all, is not before us. The record is silent whether there has been production of oil and gas from the land, but the fact remains that in applying the statute the county officials determined it did have a value upon which to base an assessment and they properly listed it for taxation separate from the fee of the land and separate from other fractional mineral interests. Hence, we conclude the plaintiff's right to the minerals was properly taxed separately to her as the owner. Her failure to timely pay the taxes assessed resulted in the inclusion of her mineral interest in the tax foreclosure action and its sale to the defendant in a proceeding which is nowise here contended to be defective or irregular in any respect.

The plaintiff principally contends that a fiduciary relationship existed between her and the defendant as a result of their cotenancy in the minerals in place, which precluded him from asserting against her the title he acquired at the tax foreclosure sale, and relies upon *Muthersbaugh v. Burke*, 33 Kan. 260, 6 P. 252; *Delashmutt v. Parrent*, 39 Kan. 548, 18 P. 712; *Jinkiaway v. Ford*, 93 Kan. 797, 145 P. 885; *Hayden v. Hughes*, 147 Kan. 511, 77 P. 2d 938; *Pease v. Snyder*, 169 Kan. 628, 220 P. 2d 151; 54 A. L. R. 875, and Black on Tax Titles, Second Edition § 282, pp. 349-352.

The defendant concedes that, where land is jointly owned, the rule prevailing in this jurisdiction is that a tenant in common is precluded from asserting against his cotenant a tax title acquired by him for taxes imposed upon the joint property, but contends such

rule is not absolute and does not apply in cases where the property *is sold for satisfaction of a debt payable by only one of the cotenants,* or for delinquent taxes levied and assessed against the individual interest of only one cotenant whose share alone is chargeable with payment of such taxes.

It is unnecessary to review the authorities relied upon by the plaintiff since that was done in *Jesberg v. Klinger,* supra. Suffice it to say they are not controlling since they involved questions where taxes were levied on the surface of the land for which all cotenants were liable and not on the individual mineral interest of one co-tenant only, or, where mineral interests of cotenants were involved in mortgage foreclosure actions. Nor is G. S. 1949, 79-426 applicable since it deals with a situation where land is owned by two or more persons and is assessed jointly, while in the case at bar the plaintiff's and defendant's respective interests were separately assessed.

It is clear from the record that there was no contractual relationship existing between the plaintiff and the defendant, and no mutual trust and confidence ever actually existed between them. (*Rutland Savings Bank v. Norman,* supra; *Brooks v. Mull,* 147 Kan. 740, 78 P. 2d 879; *Bemis v. Bemis,* 151 Kan. 186, 191, 98 P. 2d 156; *Taylor v. Brindley,* 164 F. 2d 235; *Shell Oil Company v. Seeligson,* 231 F. 2d 14.) The defendant was under no duty or obligation to pay the plaintiff's taxes since they were assessed separately to her as the owner and were a lien only upon her undivided one-seventh interest and not upon any part of the defendant's remaining interest in the land. (G. S. 1949, 79-420.) Contribution will be allowed only where the payment is predicated on a common burden or liability (G. S. 1949, 79-426), but the taxes assessed on the plaintiff's undivided interest was not a common burden or a liability upon the common property. The sale of the plaintiff's interest by the sheriff did not affect the common property or relieve it of any burden or liability since none existed, nor did the sale affect any of the other cotenants or their respective interests in any manner.

The precise question presented has not previously been decided by this court, but we think that where mineral interests in place have been severed and carved out of the land, and taxes are separately assessed against the mineral interest of one cotenant, rather than against the common property as a whole, which become delinquent and remain unredeemed and such interest is sold by the sheriff at a tax foreclosure sale, another cotenant is as free to purchase such

mineral interest as any member of the general public and may acquire fee simple title as against his cotenant, provided, of course, he acts in good faith and is under no contractual obligation, express or implied, to pay the taxes separately assessed against his cotenant. Other jurisdictions which have considered the question have reached the same conclusion. (*McCready v. Frederickson,* 41 Utah 388, 126 P. 316; *Bennet v. N. C. S. L. & I. Co.,* 23 Colo. 470, 48 P. 812, 58 Am. S. R. 281; *Hanley v. Federal Mining & Smelting Co.,* 235 F. 769; *Davis v. Cass,* 72 Miss. 985, 18 So. 454; *Anderson v. T. G. Owen and Son, Inc.,* 231 Miss. 633, 97 So. 2d 369.) See, also, 14 Am. Jur., Co-tenancy, § 54, p. 125; 86 C. J. S., Tenants in Common, § 64, p. 436; Annotation 54 A. L. R. p. 906, and 85 A. L. R. p. 1538.

We think the defendant was an eligible purchaser at the tax foreclosure sale to the same extent as a stranger might be notwithstanding the fact that he owned the surface rights and an undivided five-sevenths interest in the minerals in place, subject to the term mineral interests of the two sisters. He owed no duty to the plaintiff to pay her taxes; he was under no contractual obligation to do so; he did nothing to prevent the plaintiff from paying her taxes or of being advised of the tax foreclosure proceeding, including the sale, and he acquired fee simple title to the plaintiff's undivided one-seventh mineral interest when he recorded the sheriff's deed which was issued to him on August 24, 1956 (G. S. 1949, 79-2804).

This conclusion compels an affirmance of the district court's judgment in favor of the defendant.

It is so ordered.