No. 33,646

HENRY HAYDEN and JOE E. HAYDEN, *Appellants*, v. SALLY HUGHES
et al., *Appellees*.

(77 P. 2d 938)

Opinion filed
April 9, 1938.

*Roy J. McMullen*, of Great Bend, for the appellants.
*Paul R. Nagle* and *Wm. Davison*, both of St. John, for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiffs brought an action for partition of certain real estate and for an accounting in connection therewith, and from a judgment that they had no interest in the real estate appeal to this court.

Although plaintiffs' petition states three causes of action, the gist of the matters complained of pertains to the second cause of action, and it alone will be noticed. It was alleged that Emmaline Hayden died (May 31, 1931), leaving as her only heirs at law the plaintiffs and the defendants Sally Hughes, Noah Hayden and Harry Hayden,

and being at her death the owner of a certain tract of land in Stafford county, which was subject to two mortgages, one to the John Hancock Mutual Life Insurance Company, hereafter referred to as the insurance company, the other to one Joseph Bittiker, and that each heir was the owner of an undivided one-fifth interest, subject to the mortgages; that on September 16, 1931, Bittiker brought suit to foreclose his mortgage, subject to the first mortgage in favor of the insurance company, secured judgment, which was assigned to Evart Garvin, the lands were sold by the sheriff to Garvin for $1,766.76, the sale confirmed, and a certificate of purchase issued to Garvin, and that Garvin entered into a contract with the insurance company, copy being attached to the petition. Briefly stated, this contract provided that Garvin assign his certificate of purchase to the insurance company to be held by it during the period of redemption, and if no redemption was made that Garvin have an option for ninety days from issuance of sheriff's deed to purchase the real estate on stated terms which included giving of a new mortgage to the insurance company for $5,500. Other clauses need not be noticed. It was further alleged in the petition that the period of redemption would have expired November 16, 1932, but that the time was extended by the first mortgage moratorium statute; that on March 24, 1934, the plaintiff John Henry Hayden (same as Henry Hayden) and defendant Sally Hughes, on behalf of themselves and the other heirs as tenants in common, filed in the district court an application for extension of the period of redemption, and the same was extended to March 1, 1935; that plaintiffs, and defendants Sally Hughes and Noah Hayden, acted in common to obtain moneys to make redemption, and on February 25, 1935, plaintiff Joe E. Hayden had such arrangement made, but on the same day was informed that defendants Noah Hayden and Sally Hughes had made arrangements to get the money, and that Sally Hughes would take assignment of the contract of purchase and would then reconvey to plaintiffs their shares; that as consideration for the moneys needed Sally Hughes would execute an oil and gas lease; that at the time the named plaintiffs and defendants were tenants in common of the real estate and were in possession thereof by a tenant; that defendant Sally Hughes obtained the moneys by entering into a contract whereby Marie Dyck or her husband was to furnish the money to pay Garvin for an assignment of his contract with the insurance company, and under which defendant Sally Hughes was to execute an oil and gas lease

to Dyck covering the interest of all the tenants in common in the lands and to convey royalty interests, at which time the period of redemption had not expired and no sheriff's deed had been issued; that the named defendants should be estopped from setting up any title in contravention of plaintiff's title, as she had lulled them into a sense of security by assuring them she would get the deed to the land and reconvey to them, and after the period of redemption had expired and a deed to Sally Hughes had been executed by the insur- . ance company, she refused to convey or to account for their shares of the moneys received, and that after she received the deed she had made a certain royalty deed and an oil and gas lease to Marie Dyck, the terms of which are not of present interest, and that she had refused to account for rents and profits. The prayer was for partition, accounting and equitable relief.

Defendant Sally Hughes filed a motion to strike, which was denied. She filed no motion to make definite and certain nor any demurrer.

The answer of defendant Sally Hughes alleged plaintiffs were guilty of laches in instituting the action, in that the sheriff's deed to the insurance company was issued March 7, 1935, filed for record April 6, 1935, and suit was not commenced until March 18, 1936; that any interest plaintiffs had was cut off by the sheriff's deed, and they were estopped. It was further alleged plaintiffs had failed to tender Sally Hughes any amounts she had paid out. She also set out fully all matters connected with foreclosure of the Bittiker mortgage, assignment of the judgment to Garvin, sheriff's certificate of purchase to Garvin, Garvin's assignment to the insurance company, sheriff's deed to the company, and the deed of the company to her, and alleged that she was exclusive owner of the land and the plaintiffs and her codefendants had no interest therein. In this statement we have ignored allegations about defendants not directly interested in this appeal.

We shall notice plaintiffs' reply only to state it is alleged Sally Hughes did not use her personal moneys to purchase the lands, but funds arising from use of plaintiffs' and defendants' interest in the lands, also that plaintiffs inquired of Sally Hughes in what amounts, if any, they were indebted to her and she refused to inform them.

There was no dispute concerning the foreclosure of the Bittiker mortgage, the assignment of judgment to Garvin, issuance of certificate of purchase to him, his assignment thereof to the insurance

company, the ultimate sheriff's deed to the insurance company, nor the deed of the company to Sally Hughes. Neither was there any dispute that the period of redemption as extended expired March 1, 1935.

The evidence showed the following: Under date of February 26, 1935, Evart Garvin assigned in writing to Sally Hughes, for the stated consideration of $2,110.23, of which receipt was acknowledged, all his interest in his contract with the insurance company whereby he had the option to purchase the lands involved, as above mentioned in the petition. Under date of February 27, 1935, Sally Hughes and husband, as first parties, entered into a written contract with Marie Dyck as second party, which provided that first parties execute and deliver to second party a royalty deed covering the lands involved for a consideration of $3,900, of which it was stated $2,110 had already been paid, the balance of $1,790 being placed in escrow with a copy of the contract until performance of the contract was had. It was also provided:

"It is agreed and understood that the above described premises have been foreclosed by the John Hancock Mutual Life Insurance Company, and that said premises have been sold under their mortgage foreclosure proceedings, and that they are the holders and owners of a certificate of purchase, and that a sheriff's deed will be executed to them within the next few days and that this transaction contemplates that the John Hancock Mutual Life Insurance Company will reconvey said premises by a warranty deed to the parties of the first part and carry back a fifty-five hundred dollar ($5,500) first mortgage; and that the consideration herein escrowed will be required to be paid to the said John Hancock Mutual Life Insurance Company as a balance due them under their certificate of purchase."

and that the royalty deed should be subject to the mortgage. When the abstract of title to the lands had been approved by second party, the escrow agent was to deliver the royalty deed to second party and pay the $1,790 to the insurance company. Also, it was provided:

"It is, however, further agreed that in the event that the John Hancock Mutual Life Insurance Company shall demand the delivery of said seventeen hundred ninety dollars ($1,790) before they deliver the deed to the said parties of the first part, then upon presentation to the escrow holder of a deed from the John Hancock Mutual Life Insurance Company to the parties of the first part, which would vest the title in them with authority to the escrow holder to have the same recorded, that in such event the escrow holder would be authorized and is hereby authorized to deliver said seventeen hundred ninety dollars ($1,790) to said John Hancock Mutual Life Insurance Company; this being conditioned, however, upon the further understanding that at such time said abstract shall show a fee simple title in the John Hancock Mutual Life

Insurance Company, free, clear and unencumbered, only subject to their right to take said fifty-five hundred dollar ($5,500) mortgage ahead of such oil and gas royalty conveyance."

Provision was also made for the execution and delivery of an oil and gas lease, for waivers of priority of the insurance company over the oil and gas lease and matters not now material. On the same date the oil and gas lease and the royalty deed were made pursuant to the contract. It was also shown that under date of June 23, 1934, the plaintiffs and Sally Hughes leased the lands to a third person for farming operations, the lease to commence August 1, 1934, and to end July 31, 1935, for a cash rent of $150, payable July 15, 1935, and a share of the wheat, oats and other small grain. It was further shown that plaintiff John Henry Hayden and defendant Sally Hughes, for themselves and the other defendants in the foreclosure action brought by Bittiker, on March 24, 1934, filed an application for extension of the period of redemption, and on April 21, 1934, procured an order of the district court extending the period of redemption to March 1, 1935. As abstracted, there is no showing that Sally Hughes denied the testimony of negotiations with the plaintiffs and her two co-defendants for saving the lands from the foreclosure. Her husband testified that in addition to the moneys received through the Dyck contract and used in getting title to the lands, he paid out $314.77 for abstract charges, insurance, recording fees, and repairs to the house. He further testified he had collected $150 cash rent, and crop rents sold for at least $500. It is not necessary that we detail the oral testimony with reference to the conversations between plaintiffs and defendants, especially Sally Hughes, with respect to plans for redeeming the lands from the sheriff's sale, or the agreement whereby the lands would ultimately be saved for them by the arrangement finally carried out.

At the conclusion of the trial the court rendered a written opinion setting out many of the undisputed facts. This opinion is embodied in the journal entry of judgment. After stating plaintiffs had never paid or offered to pay Mrs. Hughes any of her expenses, except the prayer of the petition that they be paid her; that there had been no statutory redemption; that Mrs. Hughes had spent a considerable sum for taxes and interest (apparently after getting title) and had given a new mortgage; that the record title stood in her name; that the sheriff's deed barred all persons to the foreclosure action, and that thereby the insurance company became the owner of the prop-

erty, and that the company had the right to sell to anyone and that Sally Hughes had the right to purchase, the court concluded as a matter of law that any interest the plaintiffs may have had in the real estate was extinguished by the sheriff's deed executed to the insurance company, and at the time the action was instituted plaintiffs had no interest in the real estate. It accordingly rendered judgment for defendants. The plaintiffs filed a motion for a new trial, in support of which they filed a written brief, shown in the abstract, and referring to a previous brief, the burden of which was that the trial court had overlooked their contention as to their rights as tenants in common with Sally Hughes and her codefendants and that she could not use their property commonly owned as a basis to provide moneys to get the property back and then deny their interest, and that it was the duty of the trial court to impress the property with a trust and to do equity among the parties. The motion for a new trial was denied and the appeal followed.

Appellants complain that the trial court erred in ignoring their rights as tenants in common with Sally Hughes. It may be observed that in the trial court the appellants made no claim of any irregularity in the Bittiker foreclosure action, nor of any matter subsequent thereto, and which resulted in title being vested in Sally Hughes, further than that Mrs. Hughes, as tenant in common with them, could not use the common property as a basis for raising funds, which by an indirection were so applied that she obtained title and thereafter denied appellants' rights. It may also be observed there is no contention by any party that appellants and Sally Hughes were not tenants in common until the period of redemption following foreclosure had expired.

It is quite clear from the trial court's opinion that it concluded that a formal redemption not having been made during the period of redemption, and a sheriff's deed having issued to the insurance company, the rights of all those entitled to make redemption were cut off, and that the company could sell to Sally Hughes or any other person, and that appellants, as former cotenants of hers, could not object. In arriving at that conclusion we think the trial court overlooked vital matters leading up to the acquisition of title by Sally Hughes.

After a cotenancy is actually dissolved there is nothing which forbids a former tenant from acquiring title to the entire property for himself (7 R. C. L. 861), and it would follow that if there were

no collusion, and a third person purchased the property and ultimately received the sheriff's deed, a purchase by one of the cotenants from the previous purchaser would convey full title and the other former cotenants could claim no interest. But the case at bar is not so simple. It is well settled and the general rule is that if a cotenant in possession purchases the property, either directly or indirectly, at a sale under foreclosure, the purchase will be deemed to have been made for the benefit of all the cotenants (62 C. J. 456, 463, 466; 7 R. C. L. 866; Annotations: 6 A. L. R. 297; 54 A. L. R. 891; 85 A. L. R. 1537). There is no dispute that prior to the expiration of the period of redemption the appellants and Sally Hughes, as cotenants, leased the lands for agricultural purposes; that they appeared together in having the period of redemption extended, and there is evidence, which according to the abstract is undisputed, that they consulted with each other with reference to ways and means of effecting a redemption. There is and can be no dispute that Sally Hughes, using the common property as a security therefor, obtained moneys by which purchase was made of the Garvin contract with the insurance company, and after the sheriff's deed was issued, to pay to the insurance company the requisite down payment in order that title be vested in her.

In *Rutland Savings Bank v. Norman,* 125 Kan. 797, 266 Pac. 98, the right of one cotenant to redeem and to cut off other cotenants was considered, and after a review of some of the authorities and our statutes, it was said:

"We have a statute prescribing the rights, privileges and duties of cotenants. (R. S. 60-3437.) We also have the statute on redemption by cotenants from foreclosure sales. (R. S. 60-3435.) We have the specific requirement as to their relative rights and duties with reference to the payment of taxes. (R. S. 79-426.) The plain and apparent purpose of all of them is to protect a cotenant in his property and at the same time protect others holding exactly the same kind of interest in the property. *Their relations are fiduciary, and they are not to be permitted to benefit themselves to the detriment of those holding similar interests.* (Italics ours.)

" 'When two parties jointly own real property, and jointly occupy it harmoniously, one of them cannot, as against the other, claim full title to such real property by adverse possession.' (*Shaw v. Bandel,* 122 Kan. 343, syl., 251 Pac. 1086.)

" 'While it is a general rule that one tenant in common may not, as against his cotenant, acquire sole title to the common property by purchase at a sale made to satisfy a lien existing when they became owners, the cotenant may not desire to object. He may consent that the purchaser take the full title indicated by master's or sheriff"s deed, he may afterwards voluntarily relinquish

his interest, and he may lose it by lack of diligence in electing to call on a court of equity to give him the benefit of the purchase.' (*Moon v. Moon,* 107 Kan. 466, syl. ¶ 2, 192 Pac. 840.)" (p. 801.)

And it was held:

"If a cotenant defendant in a foreclosure action elects to redeem a greater interest than his own proportion allowed by statute he does so for the benefit of himself and his cotenant, with the right of contribution in the latter within a reasonable time.

"When the cotenant who has redeemed the entire estate from foreclosure sale holds his interest therein free from the obligation of the common grantor, and the other did not, the latter, in order to enjoy the privilege of contribution, must pay the redeeming cotenant the entire amount paid by him for redemption and interest thereon." (Syl. ¶¶ 3, 4.)

Where the cotenants were all anxious that their common property be saved, and to accomplish this each made an effort to raise funds for that purpose, and one used the common property as security for raising funds and ultimately acquired title by purchasing contract rights of the holder of the certificate of purchase, should it be said that because a sheriff's deed issued to a third person, the rights of the cotenants as such were extinguished, and the one purchasing obtained title through an independent source, or should it be said that the circumstances were such that the one acquiring title held for all who wished to come in and contribute? Should form rather than substance govern? As we view the matter, were we to place approval on what was done, we would encourage breaches of confidence, undue advantages, and conduct, which, if not actually fraudulent, was unconscionable. Suppose that one of the plaintiffs had used the property to raise money and had taken the property using the same methods followed by Sally Hughes, would she have had cause to complain? We think it cannot be gainsaid. In such a case, the relations between the cotenants are fiduciary, and one cannot benefit himself at the expense of the others. (See *Rutland Savings Bank v. Norman,* supra, page 801; 62 C. J. 456, 463, 466; 7 R. C. L. 857.) What was done, although actually carried out as a purchase of Garvin's contract with the insurance company and a subsequent performance of the rights therein granted, was in substantial effect a redemption from the Bittiker foreclosure sale. The moneys paid Garvin for his assignment would, if paid to the clerk of the court, have effected a redemption. The effective purpose to be served by the method that was followed was to refinance the first mortgage lien of the insurance company. Back of it all, however,

was the use of the common property to effect the result of saving the property, and the method used was to a considerable extent immaterial. And this appears from the undisputed written evidence. Appellants' oral testimony corroborates and explains what was done. It must be held that Sally Hughes holds title for the appellants as their interests may appear.

In its written opinion the trial court stated that appellants had never paid or offered to pay Sally Hughes any part of her expenses except as tendered in her petition, but that it did not base its decision thereon is clear. But it is not at all clear that the evidence as abstracted warrants the finding, for evidence is disclosed of an offer to pay and a refusal to disclose any amount due. If there was any denial it is not abstracted, nor does the brief of Sally Hughes say more than to quote the finding. On the other hand, it appears from written documents that practically all of the funds used by Sally Hughes in acquiring the title were those raised by using the common property and that before the period of redemption had expired. The record is not clear, but apparently Sally Hughes has collected rents in excess of any other amounts expended in acquiring the property. In the view taken by the trial court, there was no necessity for, and it made no specific findings with respect to, any accounting between the parties, nor as to any amounts that may be due from any one to the others. Nor did it make any findings with respect to defendants Noah Hayden and Harry Hayden, former cotenants with appellants and appellee Sally Hughes, as to whether they had acquiesced in what she had done in such manner that they no longer have any interest in the lands involved. On further hearing, those matters are proper for consideration. It is obvious they must be determined before it can be found just what interest appellants may now have in the real estate.

The trial court made no findings that appellants were guilty of laches in instituting the action. There is little in the evidence that may be said to pertain thereto. The deed to Mrs. Hughes was not made until June 10, 1935, nor recorded until July 12, 1935. The action was commenced March 18, 1936. The record does not disclose laches barring the appellants.

The judgment of the lower court is reversed and the cause remanded for further proceedings consistent herewith.