No. 37,960

R. W. Pease, *Appellee and Cross-Appellant*, v. J. R. Snyder and Leila M. Snyder, *Appellants*, Harry Grimm and Grace M. Grimm, *Appellees.*

(220 P. 2d 151)

Opinion filed July 8, 1950.

*Archie T. MacDonald*, of McPherson, argued the cause, and *Daniel O. Lardner*, of Fort Scott, and *Russ B. Anderson*, of McPherson, were with him on the briefs for the appellants.

*Walter B. Patterson* and *Howard Hudson*, both of Fort Scott, argued the cause, and *Douglas Hudson* and *Douglas G. Hudson*, both of Fort Scott, were with them on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

Parker, J.: This is an action in the nature of a creditor's bill to subject certain real estate standing in the name of Leila M. Snyder to the satisfaction of a judgment obtained by the plaintiff against her husband, J. R. Snyder.

The pleadings are not in controversy and need not be detailed.

For purposes of this appeal the essential and controlling facts disclosed by the record can be stated thus:

Leila M. Snyder and J. R. Snyder are, and on all dates in question were, husband and wife. In 1926 they acquired title to the real estate in controversy as tenants in common. They failed to pay the taxes assessed against it with the result it was sold for taxes at the end of a tax foreclosure action instituted by Bourbon county and

bid in at tax foreclosure sale by Leo W. Bohon and wife for the sum of $1,010. At that time the total taxes and expenses of the action were $658.49. The purchasers paid the amount of their bid into the court and on June 30, 1943, pursuant to judicial order, the land was deeded to them by the sheriff of Bourbon county and the deed was duly recorded in the office of the register of deeds of such county. On the same date the Snyders filed a motion in the foreclosure suit challenging the validity of the sheriff's sale on grounds they had no knowledge of the pendency of the action and had not been served with summons. The sale was never set aside and the judgment on which it depends is in full force and effect. July 22, 1943, without ever taking possession of the property Bohons conveyed the title to Mrs. Snyder for an agreed price of $1,085. The purchase price was paid by a draft which Mrs. Snyder testified had been obtained from the First State Bank of Pittsburg and paid for by her with her own personal funds. Thereafter, and on June 30, 1943, a check was issued by the clerk of the district court of Bourbon county for $351.52 to the Snyders jointly and cashed by them. The amount of this check represented the difference between the Bohons bid and the amount of the judgment in the tax foreclosure action.

On March 1, 1946, the Snyders entered into a written contract to sell the real estate to the defendants, Harry and Grace M. Grimm, for the sum of $4,725 and they took over possession thereof in April, 1946. It is conceded this lawsuit was instituted before they had fully paid the consideration.

The plaintiff, who in October, 1943, had obtained a judgment against J. R. Snyder upon a simple promissory note for the sum of $497.24 with interest and costs but had failed to collect such judgment after the issuance and return of two executions in the latter part of 1945, commenced this action on October 22, 1946.

After hearing the evidence the trial court made findings of fact and conclusions of law and rendered judgment in favor of the plaintiff in which it held the proceeds of the property sold to the Grimms was amenable to the satisfaction of the plaintiff's judgment.

No useful purpose would be served by setting forth the findings of fact or the conclusions of law. It suffices to say that while the findings disclose the factual situation heretofore related they are wholly silent as to any facts which would warrant a conclusion that any part of the purchase price paid by Mrs. Snyder to the Bohons

for her deed to the involved property was advanced by or came from funds belonging to her husband, or that there was any understanding between them the title to the real estate should be taken in her name and jointly owned by them, or that in taking the deed and acquiring such title she was guilty of any fraud or collusion. It can be added the same holds true of the conclusions of law.

From a careful examination of the record it is crystal clear the trial court's judgment was based upon the theory that under the facts and circumstances heretofore related Mrs. Snyder did not acquire title to the property because of the rule that a cotenant in possession cannot acquire title to the common property and that when it is purchased by such a person the purchase is presumed to have been made for the common benefit of all cotenants. Indeed the first and in fact the all decisive conclusion of law upon which such judgment was based expressly so states. It reads:

"The re-purchase of the real estate involved by Leila M. Snyder from the purchaser at the tax sale amounted to a redemption in behalf of the co-tenant, John R. Snyder."

That the statement last mentioned is correct and entirely justified by the record is evidenced by the principal contention advanced by counsel for the plaintiff in defense of the judgment. The brief filed by them in this court states:

"J. R. Snyder and Leila M. Snyder, his wife, were co-tenants and by the purchase of the property by Mrs. Snyder by way of a quitclaim deed from the holders of a tax deed that all rights under it inured to their benefit as co-tenants and that in procuring the said quitclaim deed that it amounted to no more than a redemption receipt or payment of the taxes, hence the relationship of co-tenancy continued to exist."

We pause here to note that this lawsuit is really between the plaintiff and the defendants, J. R. Snyder and Leila M. Snyder, and that the rights of the defendants, Harry Grimm and Grace M. Grimm, under the judgment, although they are appellees herein, depend entirely upon whatever disposition is made of the cause as between the parties first named. On that account we shall refer to the plaintiff as the appellee and the Snyders as the appellants.

It is true, as appellee points out, that in this jurisdiction the general rule is that if a cotenant in possession purchases the common property, either directly or indirectly, at a judicial sale, the purchase will be deemed to have been made for the benefit of all the cotenants (*Hayden v. Hughes*, 147 Kan. 511, 77 P. 2d 938). That, however, is not the situation which confronts us here.

In the instant case the Snyders, as cotenants, had permitted the taxes on their property, to become delinquent. In due course Bourbon county, as authorized by the provisions of chapter 79, article 28, G. S. 1947 Supp., providing for judicial foreclosure and sale of real estate on which taxes are delinquent, had foreclosed such property and sold it at judicial sale to the Bohons who, after confirmation of such sale and the execution of a sheriff's deed conveying title thereto; promptly placed such deed of record in the office of the register of deeds. Under express provisions of the statute under which the foreclosure was had (see G. S. 1947 Supp. 79-2804) when that deed was filed for record the Bohons became vested with a fee simple title to the real estate in question and the Snyders were divested of all right, title or interest therein.

There is absolutely nothing in the record of the case at bar which warrants a conclusion, even by inference, that the Bohons were acting for anyone but themselves in bidding in the property at the sale; in paying into the court the amount of the bid; in obtaining the deed or in filing it for record, or that they had any understanding or agreement whatsoever with Mrs. Snyder or her husband that title to such property was to be reconveyed to the Snyders or any of them after the Bohons had acquired it.

Thus it appears that Mr. and Mrs. Snyder were not cotenants at the time she negotiated for and repurchased the real estate from the Bohons and that she did not purchase it either directly or indirectly at judicial sale. The result is there is no room for application of the rule to which we have heretofore referred and the trial court erred in concluding as a matter of law that the repurchase of such real estate by Mrs. Snyder from the purchasers of the tax sale amounted to a redemption in behalf of her cotenant, John R. Snyder.

The conclusion just announced is supported by *Hayden v. Hughes,* supra. In the opinion of that case, even though the cotenancy rule was applied under the facts there involved because of collusion between the parties, it is said:

"After a cotenancy is actually dissolved there is nothing which forbids a former tenant from acquiring title to the entire property for himself (7 R. C. L. 861), and it would follow that if there were no collusion, and a third person purchased the property and ultimately received the sheriff's deed, a purchase by one of the cotenants from the previous purchaser would convey full title and the other former cotenants could claim no interest. . . ." (pp. 516, 517.)

It is also recognized in *Watson v. Jones,* 103 Kan. 327, 175 Pac. 96, where, although we held the purchase of a tax title by a cotenant (Campbell), with all the rights attending it, inured to the benefit of the purchaser's cotenants, we said:

"If Campbell had taken and held title under such circumstances that redemption from him became foreclosed, and the title of all former owners became completely extinguished, a different question would be presented. He held title just six days." (p. 329.)

It also finds support in 62 C. J. 465 § 91, where the following statement appears:

"Where a cotenancy has been extinguished by a judicial sale of the property, as upon foreclosure and expiration of the period of redemption, it has been held that the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or agreement to acquire it for the common benefit, . . ."

See, also, 14 Am. Jur. 126, § 55, which reads:

"On the other hand, however, it is held that if, without collusion, a third person purchases the property at a judicial sale for the debt of all, and afterwards conveys the title to one of the former cotenants, the latter takes a good title as against his erstwhile cotenants, since the acquisition of title by the third person operates to terminate the cotenancy. But where the third person merely acts in behalf of his grantee, the situation is different; in such a case the deed to him will be regarded merely as a matter of form and the general rule will be applied."

Appellee places much weight upon our decisions (see *Muthersbaugh v. Burke,* 33 Kan. 260, 6 Pac. 252; *Delashmutt v. Parrent,* 39 Kan. 548, 18 Pac. 712; *Watson v. Jones,* supra) all holding that as a general rule a tenant in common will not be permitted to assert against his cotenant a tax title acquired by him for taxes imposed on the joint property. We have no quarrel with the rule announced in those decisions. The trouble is they have no application here for the simple reason the cotenancy theretofore existing between the appellants had been terminated and Mrs. Snyder did not purchase the property at a tax sale, either directly or indirectly, but acquired it without collusion from third persons who were the absolute owners thereof.

What has been heretofore stated and held requires a reversal of the judgment with directions to grant a new trial.

It is so ordered.