No. 33,573

VERA SETTLE et al., *Appellants*, v. JOE GLENN and MARIE GLENN, *Appellees*.

(78 P. 2d 57)

Opinion filed April 9, 1938.

*Harold W. McCombs*, of Russell, for the appellants.
*J. H. Jenson*, of Oakley, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was originally an ejectment action. It was brought by the fee title owners and their spouses against the defend-

ant, Joe Glenn, the holder of certain tax deeds. His wife, Marie Glenn, was joined as a party defendant. The trial court set aside the tax deeds and rendered a judgment in rem in favor of the tax title holder in the amount paid for the tax deeds, together with interest at the rate of twelve percent per annum from the date thereof, and for court costs. The judgment further provided that if plaintiffs failed to pay the judgment within thirty days an order of sale should issue directing the sale of the land to satisfy the lien. From that judgment plaintiffs appeal. We shall refer to the parties as plaintiffs and defendant.

The action involves the west half of a section of land in Logan county. The defendant, Joe Glenn, obtained two tax deeds on September 5, 1931, one of which covered the northwest quarter and the other the southwest quarter of the section. Agnes Knox had been the life tenant under the will of her husband. She lived until May 11, 1936. Thereafter the plaintiffs, being the remaindermen and their spouses, brought this action.

Plaintiffs first contend the trial court erred in finding the defendant, Joe Glenn, took possession of the premises within two years. In determining the correctness of a specific finding, we need of course examine the record only for the purpose of ascertaining whether there was substantial competent evidence to support the finding, and not whether there was evidence to the contrary. (*Smith v. Lockridge,* 145 Kan. 395, 397, 65 P. 2d 345; *State v. Stephens,* 146 Kan. 660, 662, 72 P. 2d 975.)

The parties stipulated as follows:

"That the plaintiffs are the heirs and only heirs-at-law of Charles Arno Knox, deceased; that prior to the year 1931, Mrs. Agnes Knox was the owner of a life estate in the lands involved in this controversy, and that the plaintiffs were the owners of the remainder; that on September 5, 1931, the defendant, Joe Glenn, received two tax deeds upon the lands involved in this action, and that both deeds were placed of record the same day they were issued; that both of the deeds are voidable, due to the fact that the county commissioners of Logan county, Kansas, had failed to adopt the provisions of chapter 288 of the Laws of 1921; that prior to the 5th day of September, 1931, Mrs. Agnes Knox, the life tenant, was in possession of said land as life tenant, and that Mrs. Agnes Knox died on May 11, 1936."

The west half of the section, being the land in dispute, was in pasture, and contained no building improvements, but was fenced. The defendant, Joe Glenn, testified in substance as follows: The life tenant had asked him whether he would pay the taxes and take

a tax deed; that she would redeem the tax deeds as soon as she was able to do so; the understanding was that he would accept the principal and interest whenever she was able to pay it; the request of the life tenant and agreement between them had been that the defendant should deed the property back to her and to no one else; in the fall of 1933, some of the remaindermen offered to redeem the land and pay him a $50 bonus, but he refused to make a deed to them by reason of his agreement with the life tenant to deed the land only to her upon payment of the amount due; in January of 1932 he had the fence repaired and put his horses in the pasture.

A man by the name of Luther, called as a witness by plaintiffs, testified in substance: At the time the tax deeds were issued on September 5, 1931, he was a holdover tenant under his lease from the life tenant for the year from March 1, 1931, to March 1, 1932; the west half of the land was in pasture and he farmed only the east half of the section; an employee of the defendant, Glenn, first repaired the fences, and in the spring of 1932 Mr. Glenn put his horses on the west half of the section; it was generally known that Bert Fick was breaking the horses on this land for the defendant, Glenn.

A tenant by the name of Graham, called as a witness for plaintiffs, testified in substance: Prior to March 1, 1932, he entered into a lease contract with the life tenant and farmed the place from March 1, 1932, to March 1, 1933; he kept his cattle in the pasture; that the life tenant in December, 1932, served notice on him to vacate; on cross-examination he identified his signature to the following instrument:

"To Whom It May Concern: This is to certify that between January 1st and March 1st, 1932, I, E. D. Graham, together with Mrs. Agnes Knox and her son, W. T. Knox, called upon Joe Glenn at his farm for the purpose of leasing *west half* of section 10, T. 12, R. 37 in Logan county as Mrs. Knox had said it would be necessary to consult the said Joe Glenn since the title to said land was in his possession and name through tax deed.—Signed: E. D. Graham. Witness: Bud Graham." (Italics inserted.)

It is true the witness further testified to the effect that he did not remember signing the instrument but that the statements therein were substantially correct except as to that portion dealing with title and possession of the defendant Glenn, under his tax deed. The witness having identified his signature to the instrument, it was the province of the trier of the facts to determine the weight to be given to the entire contents of the instrument. Moreover, the witness did admit the life tenant requested that he see the defendant concerning

the renting of the west half, that the life tenant desired to consult the defendant Glenn, and that they did both consult him concerning the lease.

The witness Fick testified in substance: He lived near to and was acquainted with the land involved; he saw defendant's horses on the land and took some of them from the land for the purpose of breaking them; at that time defendant had from twelve to fourteen head of horses on the land.

The witness Rogers testified in substance: He was acquainted with the land; he and the defendant went to the land to see the horses; he went there with the view of buying the horses; ten or twelve head of horses were then in the pasture.

While there was other and conflicting testimony, there was substantial evidence to support the finding of possession by the defendant. The testimony of plaintiffs' own witness, Graham, indicated that his possession for the rental year, March, 1932, to March, 1933, was not adverse to that of the defendant. It disclosed the life tenant was unwilling to make the lease to him without first consulting the defendant, and that the defendant was consulted concerning the lease by both the life tenant and Graham, the prospective tenant. According to the stipulation the tax deeds were voidable only, and were recorded the date they were issued, namely, on September 5, 1931. Defendant went into possession within two years from the issuance of the tax deeds. Clearly, in order to be entitled to the relief granted, defendant was under no duty to bring an action for the recovery of the property within two years under the provisions of G. S. 1935, 60-304 (third), relied upon by plaintiffs.

In support of plaintiffs' contention that defendant had not acquired possession, they cite *Dickinson v. Bales,* 59 Kan. 224, 52 Pac. 447; *Buckner v. Wingard,* 84 Kan. 682, 115 Pac. 636; and *Trager v. Elliott,* 106 Kan. 228, 187 Pac. 875. A reading of those opinions will readily disclose the dissimilarity of facts with those in the instant case, both as to the fact of possession and also as to the recognition of the right of that possession by the owner.

Touching the question of possession, plaintiffs emphasized the fact the life tenant signed the leases on the land at all times and received the rentals after the issuance of the tax deeds. We know of nothing to prevent the holder of a tax deed from permitting the life tenant to have the benefits of the rentals if the tax title holder was willing she should have them.

In order to avoid confusion it must be remembered the question in the instant case is not whether defendant acquired title to the land by virtue of the tax deeds and his possession thereunder. The judgment decreed he did not have a valid title. From that judgment he has not appealed. The question before us is whether he was entitled to the relief granted. It was agreed the tax deeds were voidable. He was entitled to the exact relief which was decreed. (R. S. 1923, 79-2506; *Bayha v. Doty,* 134 Kan. 494, 496, 7 P. 2d 103; *Bryant v. Clements,* 142 Kan. 154, 158, 46 P. 2d 7.) In the Bryant case it was said:

"The statute provides in effect that when a tax-deed holder is defeated in an action by or against him for possession, the successful claimant shall be adjudged to pay to the defeated claimant all taxes, interest and costs before the successful claimant shall be let into possession. (R. S. 79-2506). . . . In such a case the tax-deed holder's remedy is by judgment of court, declaring a lien and ordering a sale unless the successful claimant satisfies the lien before sale." (p. 158.)

As to the rate of interest on a judgment, defendant was entitled to interest at the rate of twelve percent per annum (R. S. 1923, 79-2506), as decreed by the court, and not to only ten percent interest as provided by the present law. (G. S. 1935, 79-2506.) The question is governed by statute. G. S. 1935, 79-2908, expressly provides:

"All matters relative to the sale and conveyance of lands for taxes under any prior statute shall be fully completed according to the laws under which they originated, the same as if such laws remained in force."

Plaintiffs further urge defendant was in privity with the life tenant and was therefore estopped from taking a tax title adverse to the remaindermen. The contention cannot be sustained. The life tenant was legally bound to pay the taxes. (*Menger v. Carruthers,* 57 Kan. 425, 428, 46 Pac. 712; *Jinkiaway v. Ford,* 93 Kan. 797, 145 Pac. 885.) She was unable to pay them. The remaindermen, not being in possession and having no right to the occupancy or use of the land, could have purchased and held the tax title. (*Jinkiaway v. Ford,* supra.) They did not do so. Defendant was under no obligation whatsoever to pay the taxes, and there was nothing to preclude him from purchasing the tax deeds. That one under obligation to pay taxes upon land cannot legally acquire a tax title, is clear. (*Jinkiaway v. Ford,* supra.) That one under no obligation to pay the taxes may obtain such title is just as firmly established. (*Jinkiaway v. Ford,* supra.) Defendant's possession

did not arise out of privity with the life tenant. He was not her tenant. He took possession under the tax deeds. The payment of the taxes appears to have been a courtesy to the life tenant. Defendant agreed to deed the property to her and to no one else whenever she was able to redeem. During her lifetime she, and not the remaindermen, were entitled to the use and occupancy of the land. She never redeemed. The judgment of the trial court gives to the defendant only that which the statute provides he shall have. The judgment results in giving the remaindermen an opportunity to do that which the life tenant was legally bound to do, and fully intended to do, but was unable to do, and which the remaindermen in equity and good conscience should be and are required to do in order to obtain possession of the property.

Plaintiffs finally insist that if defendant is entitled to recover at all he is entitled to interest only from the date of the offer of the remaindermen to redeem in the year 1933. Assuming, without deciding, that a valid tender was made, the defendant was not obliged to make a deed to the remaindermen during the life of the life tenant in violation of his agreement to make a deed only to her.

The judgment is affirmed.