No. 34,202

H. B. BRINEY (Revived in the Name of WAYNE BRINEY, Administrator of the Estate of H. B. Briney, Deceased), *Appellee*, v. G. I. TOEWS, *Appellant*.

(95 P. 2d 355)

Opinion filed November 10, 1939.

*R. F. Crick, M. C. Bucklin*, both of Pratt, *Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing* and *G. K. Purves, Jr.*, all of Wichita, for the appellant.

*William B. Hess* and *E. R. Barnes*, both of Pratt, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover commissions for the sale of petroleum products alleged to be due under an oral contract. The action was tried by the court. Plaintiff prevailed, and the defendant appeals.

Subsequent to the filing of the appeal in this court, H. B. Briney, appellee, died, and the action and judgment have been revived in the name of Wayne Briney, administrator of the decedent's estate.

The appeal is from an order overruling defendant's motion to strike certain findings of fact and conclusions of law and from the order overruling defendant's motion for new trial.

The real issue in the lawsuit was whether plaintiff, under the particular facts and circumstances to be narrated, was entitled to recover commissions on outstanding and uncollected accounts. The court made findings of fact and conclusions of law, which are as follows:

1. "That on February 5, 1929, the defendant, who at the times in question was the owner of a hardware store and filling station in Cullison, Kan., and also engaged in the business of selling petroleum products at retail by tank wagon to the people in that vicinity, engaged the plaintiff to operate a tank wagon and to act as agent for defendant in the sale of petroleum products, the defendant at such times being the owner of the bulk station, that is, the storage tanks for the handling of petroleum products, and being the owner of the tank wagon used for the distribution of such products. All of such products so handled were purchased and settled for by the defendant and *most of them* were delivered to the bulk station, where the plaintiff would obtain them for sale and delivery. *Defendant received all invoices, and instead of giving them to Briney for checking he put down figures purporting to show receipt of commodities on a slip of paper and hung them on a hook in his hardware store for the plaintiff to get.* Toews also bought oils for his own sales garage operated by him; also he took orders for oil from customers at his store and hung them up on a hook for Briney to get. *Decisions as to charge or cash sales were made by the defendant.* The commodities remained the property of the defendant at all times until sold *and there was no agreement that plaintiff should bear any losses.* All receipts received by Briney were deposited in a Cullison bank to defendant's credit on which Briney could not draw. Plaintiff kept the books provided for him and weekly gave copies to the defendant.

2. "At such time the plaintiff and defendant entered into an oral agreement as follows: Plaintiff was to sell the petroleum products upon a commission basis, and he was to receive two cents per gallon for deliveries made outside the city limits of Cullison on such commodities as gasoline, kerosene and distillate, and one cent per gallon for sales and deliveries within the city limits of Cullison, and for the sale and delivery of oils and greases outside of the said city limits he was to receive ten percent thereon and on sales of same within said city limits he was to receive five percent thereon.

"These commissions were to be paid upon *all sales, but there is a dispute as to when the commissions on sales on time or credit should be paid. The defendant contends that such commissions should not be paid until payment was made upon such commodities sold on credit.* Plaintiff was to receive a drawing account of $28 per week, to be deducted, however, from the actual commissions earned. Prior to this arrangement the plaintiff had been in the employ of the defendant as salesman for farm implements and hardware handled by defendant.

3. "That this business was conducted by said parties *up to February 13, 1932,* at which time a dispute arose and *plaintiff thereafter* did nothing further *toward the sale of said commodities. On February 13, and also on February 15, 1932, defendant made demands upon plaintiff for the tank wagon which was in plaintiff's possession together with the petroleum products contained therein and on February 19, 1932, the plaintiff delivered same to the defendant.*

4. "According to their arrangements it was the duty of the plaintiff to make a ticket on each sale made showing the amount and kind of product sold, whether for cash or credit, and upon making collections to make a ticket showing the amount of cash received and to whom it was to be credited, also each week plaintiff was to make weekly report to defendant showing the amount and

kind of products sold, the amount of cash and credit sales, the amount of deposits made in the bank to defendant's credit, the amount of cash on hand, and upon this report make a weekly inventory. Deductions were supposed to be made of the sales made by plaintiff from the inventory of the goods on hand at the commencement of the relationship and also this report was intended to show the stock of goods received by the plaintiff for sales as shown by the slips of paper made by defendant from the invoices by him received.

5. "During this arrangement plaintiff also ran an account with the defendant for oil and gas purchased by him from the defendant and for hardware and other products purchased by plaintiff from the defendant.

6. "At the termination of the relationship between plaintiff and defendant *there was a large amount outstanding and uncollected in accounts resulting from sales made by plaintiff during such relationship.*

7. "At the termination of their relationship *defendant took possession of all the accounts and notified all the debtors not to pay anything to the plaintiff. Defendant never advised with Briney in any way as to the handling of notes and accounts and never gave Briney any information relating to the same until after the commencement of this suit on February 16, 1935.*

8. "The court finds that the total commissions on sales made by plaintiff, including commissions on uncollected accounts, was $8,595.52. That the commissions on uncollected accounts at the time of trial amounted to $1,546.68, leaving a balance on commissions earned by plaintiff in the sum of $7,048.84.

9. "The court further finds that during the course of employment the defendant paid to the plaintiff as commissions the sum of $5,106.81, which should be deducted from the commissions earned, leaving a balance of $1,942.03.

10. "The court further finds that the plaintiff is indebted to defendant on certain items for which defendant is entitled to an offset against the commissions earned, which items and amounts are as follows:

```
"For International truck................................. $500.00
 For Briney oil account.................................  898.00
 For seed wheat furnished plaintiff by defendant..........  92.80
 For tag on truck........................................  15.00
 For J. R. Guttridge note...............................  45.00
 For hardware account due defendant....................  232.39
 For Ward account.......................................  35.00
```

11. "That the defendant is not entitled to credit for interest on the Guttridge note after he received same, as the amount due on said note at such time should have been credited on the sums then due to the plaintiff.

12. "That while the Briney $200 note upon its face is barred by the statute of limitations, yet the defendant is entitled to credit for the principal thereof, to wit, $200 as an offset, but is not entitled to credit for interest thereon unless the plaintiff be likewise credited for interest upon an equal amount upon his account for commissions, both of which the court finds should be disallowed.

13. "The court finds that the defendant should be charged with the full amount of the Berry account in the sum of $165.

14. "The court *adopts the conclusion of the auditor* testified to in the case and finds that the defendant is entitled to an offset of $422.65 on account of what is claimed to be a deficit in cash, *although it does not appear* that plaintiff *was guilty of any negligence in handling said account.*

15. "The court finds from the admissions of the parties that plaintiff is entitled to a credit of $634.01 on the sums due Briney from Toews by reason of a check for said amount endorsed by Briney and delivered to Toews for such purpose.

16. "The court finds that the offset claimed by defendant for *shortage of commodities* should be and the same is disallowed for the reason that the court *is not satisfied* from the evidence that the plaintiff actually received the commodities in the quantities charged against him or that if he did so receive them in such quantities that the shortages occurred on account of the misconduct of plaintiff, or that he misappropriated them or any part thereof at a time and in a manner and under such circumstances as that under the relationship of the parties the plaintiff became legally liable to the defendant for the shortages claimed.

17. "The court finds that even although the agreement between the parties provided that plaintiff should not receive commissions upon credit sales until after the accounts for credit sales should be paid, the defendant by his conduct in handling such accounts after the termination of their relationship and in commingling such accounts with his other accounts, taking renewals and chattel mortgages, granting extensions and executing releases, excluding plaintiff from participating in the collection thereof, and the failure of defendant to exercise due diligence in the collection of said accounts, is estopped from claiming that the commissions on said accounts are not due and payable, and that by reason thereof the defendant has become liable to plaintiff for his commissions upon all of said credit sales even although said accounts have not been fully paid.

18. "The court finds that in the accounting herein had between the accounts of the plaintiff and the defendant the plaintiff is entitled to recover the sum of $1,750.75, as shown by the following summary, to wit:

"Total commissions earned by plaintiff.................. $8,595.00
Offsets against said commission as follows:

| | | |
|---|---|---|
| Checks paid plaintiff......................... | $5,106.81 | |
| Truck ...................................... | 500.00 | |
| Briney oil account........................... | 898.00 | |
| Seed wheat ................................. | 92.80 | |
| Tag ........................................ | 15.00 | |
| Guttridge note ............................. | 45.00 | |
| Ward account .............................. | 35.00 | |
| Cash deficit ............................... | 422.65 | |
| Briney note ............................... | 200.00 | |
| Berry account ............................. | 165.00 | |
| Total of above................................... | | $7,478.26 |
| Balance ...................................... | | $1,116.74 |
| Briney check returned............................... | | 634.01 |
| | | $1,750.75 |

"CONCLUSIONS OF LAW

1. "As a matter of law the court concludes that the plaintiff is entitled to recover from the defendant the sum of $1,750.75, with interest thereon at the rate of six percent per annum from the date of the trial of this suit.

2. "That the costs of this action should be divided equally between the plaintiff and the defendant." (Italics inserted.)

We shall refer to the parties as plaintiff and defendant.

Defendant first contends the action was barred by the three-year statute of limitations. (G. S. 1935, 60-306, *Second.*) He directs our attention to finding number three, which discloses that after the dispute on February 13, 1932, plaintiff made no further sales and that defendant on February 14 and 15, 1932, demanded a return of his tank wagon, together with its contents, and that the instant action was not filed until February 16, 1935. He further urges that the holding of the property by plaintiff until February 19, 1932, could not extend the period of limitation. It will be noted the trial court did not definitely determine when, under the oral agreement, the commissions should become due; that is, whether they were due on the date of sales or on the date the accounts were ultimately collected. Plaintiff pleaded he was entitled to commission on all sales without alleging when the commissions were due. His testimony, when considered in its entirety, was open to the interpretation that there was no definite agreement as to when the commissions should be due. Defendant pleaded and testified they were not due until the accounts were collected. Now the accounts on which commissions were sought in this action were the accounts which were outstanding and uncollected on February 13 and 15, 1932. Had defendant claimed the commissions were due on the date of sale, the court would have been obliged to make a definite finding as to when they were actually due in order to determine whether the action was barred. Under defendant's own theory and evidence, however, the action was not barred, as none of the accounts upon which commissions were sought had been collected over three years ago. Moreover, defendant took possession of all accounts and notified all debtors not to pay plaintiff. It is also well to note defendant credited plaintiff's account with the contents of the tank wagon in the sum of $16.66 on February 19, 1932. The keys to the bulk station were not delivered to defendant until February 20, 1932. Defendant also made collections on oil accounts even after this action was filed on which he actually credited plaintiff's commission account with the respective commissions in the sums of $115.93 and $193.96. The latter amount was credited on July 19, 1933. In support of defendant's contention that the action was barred, he cites cases involving the severance of an ordinary employment. They are not applicable here.

It is next urged appellee by his failure to keep a true account of sales made and of merchandise on hand, coupled with admitted misappropriations and willful disobedience of instructions, forfeited his right to commissions. An auditor was employed by the defendant and defendant was fully credited with amounts found due him according to that audit which the court accepted. That finding, however, clearly indicates the court did not believe there was negligence on plaintiff's part in the handling of the accounts. Plaintiff possessed only an eighth-grade education, and it appears he regularly sought the assistance of defendant's bookkeeper in the handling of his records. At any rate, there was nothing disclosed which barred a recovery of his commission after defendant was properly credited with the amounts found due according to defendant's own auditor.

Defendant next insists finding number 16 should have been stricken in response to his motion for the reason it is unsupported by the evidence and that the undisputed testimony discloses appellee's merchandise account was short in the sum of $1,061.91. The trial court was the court which defendant was required to satisfy that such shortage actually existed. That court plainly said the evidence did not satisfy it such shortage existed. A court is not obliged to accept at full value even testimony which is not directly contradicted. (*Smith v. Lockridge*, 145 Kan. 395, 65 P. 2d 345; *Kallail v. Solomon*, 146 Kan. 599, 72 P. 2d 966; *State v. Jones*, 147 Kan. 8, 11, 75 P. 2d 230.) On review of findings of fact this court is concerned only with evidence which supports or tends to support the findings and not with evidence which overthrows or tends to overthrow them. (*Smith v. Cudahy Packing Co.*, 145 Kan. 36, 40, 64 P. 2d 582; *Settle v. Glenn*, 147 Kan. 502, 503, 78 P. 2d 57.) In view of the manner in which the commodities were handled and the business transacted, we cannot say there was no substantial evidence to support the finding.

Defendant finally urges the court erred in making finding number 17, to the effect that defendant was estopped from enforcing the provisions of the agreement which provided that plaintiff was not entitled to commission on uncollected accounts. That contention, in view of the facts, is incorrectly stated. It assumes something not found. The trial court did not find there was no commission due on uncollected accounts. The substance of its findings and the effect of its judgment are exactly to the contrary. Indeed, defendant himself credited plaintiff with commissions on accounts which he, the defendant, collected even after this action was filed. Just what did the

court find on the subject of estoppel? It found, in view of defendant's conduct as shown in finding number 17, that defendant was estopped, even though the agreement was to the effect that no commissions should be due until the accounts were paid. We fail to see any error in that finding or in the conclusion based thereon. The conduct of the defendant as disclosed by that finding is supported by the evidence. The defendant had passed upon all credits. Even on defendant's own theory as to when the commissions became due, plaintiff obviously had an interest in the collections of the accounts at the time he quit making further sales. Finding number 7, which is not challenged, discloses how completely defendant interfered, hindered and prevented the making of collections by plaintiff and how drastic was his action in preventing further performance by the plaintiff. The defendant took it entirely upon himself, without consulting plaintiff in any manner, to make all collections. He quite effectually barred plaintiff from all participation in that effort. He assumed complete jurisdiction and control. He later extended further credit on the accounts, gave releases, took mortgages and mingled the accounts with his own hardware business. He handled the accounts in such manner as appeared most advantageous to him without regard to the interests of the plaintiff. His method of making or not making collections of these accounts was determined largely by his desire to create good will and to also advance the interests of his hardware business. A brief portion of defendant's testimony will sufficiently disclose finding number 17 was well supported by the evidence. Defendant testified:

*"They were my accounts. They were not his.*

"Q. Were some of these people able to pay? A. Claimed they weren't.

"Q. Well, were they? A. *I couldn't say.*

"Q. Did you investigate to see whether they were or not? A. I investigated my customers and I would furnish them stuff so they could work and keep on farming. . . . I have no record that would show the mortgages I took. I know the notes are shown, but they are not shown as divided. 'The bill of sale I took from Guttridge on the implements are out at his place. I never took one of them.' I gave up the property, but I did not give up the notes." (Italics inserted.)

The defendant could not in this manner interfere, hinder or prevent performance by the plaintiff and thereafter disclaim liability for commissions on the ground of nonperformance. (12 Am. Jur., Contracts, § 386; 2 C. J., Agency, § 439, p. 772; 13 C. J., Contracts, §§ 721, 722, 723; Restatement, Contracts, § 315; *Mill v. Pope*, 29 Kan. 289; *Supply Co. v. Cement Co.*, 91 Kan. 509, 512, 138 Pac.

599.) Nor is it a valid defense, in the instant case, to say plaintiff failed to show he could have made collections where the defendant failed. Plaintiff was deprived of that opportunity. Had he been given the opportunity and failed, we would be confronted with a different question. Defendant admittedly was moved by other considerations than the mere collection of the petroleum accounts. The trial court also weighed the evidence on the question whether plaintiff's conduct had been of such a character as to justify defendant's assumption of complete control over the accounts, and by its findings and judgment resolved that question against the defendant. In view of the record, we are not inclined to disturb the judgment. It is therefore affirmed.